# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

WAYNE SEALS,

        Defendant-Appellant.

UNPUBLISHED
November 13, 2014

No. 316474
Wayne Circuit Court
LC No. 11-009610-FC

Before: WHITBECK, P.J., and FITZGERALD and MURRAY, JJ.

PER CURIAM.

Defendant, Wayne Seals, appeals as of right his convictions, following a bench trial, of second-degree murder,[1] assault with intent to do great bodily harm,[2] and possession of a firearm during the commission of a felony (felony-firearm).[3] The trial court sentenced Seals to serve 15 to 25 years' imprisonment for his second-degree murder conviction, 3 to 10 years' imprisonment for his assault with intent to do great bodily harm conviction, and two years' imprisonment for his felony-firearm conviction. We affirm.

## I. FACTS

### A. BACKGROUND FACTS

Seals's conviction arises from an altercation that occurred at Cheetah's Lounge on April 7, 2011. Todd Costello testified that he and the victim, Christopher Rice, were friends and members of the Liberty Riders Motorcycle Club. According to Costello, he and his girlfriend went to Cheetah's some time after 5:30 p.m. While at Cheetah's, Cecil Dunlap, a bouncer who is black, approached Costello and told him that his conduct with his girlfriend was against the establishment's rules. Dunlap told Costello to leave.

---

[1] MCL 750.317.

[2] MCL 750.84.

[3] MCL 750.227b.

Daniel Abraham, a valet at Cheetah's, testified that he witnessed Costello get thrown out of the building around 7:00 p.m. According to Abraham, Costello started making threats to Dunlap, used racial slurs, and said that he was going to "come back and get you[.]" Costello got into a car with a group and left his car at Cheetah's. Jason Stafford, another Cheetah's employee, testified that he heard Costello yell that he would "be back up here[.]"

Costello testified that he left Cheetah's and went to the Liberty Club's club house. Some point after 11:00 p.m., he and members of the Liberty Club returned to Cheetah's. Costello testified that he intended to retrieve his car. Abraham testified that Costello returned to Cheetah's with 20 to 30 men, and he heard three or four gunshots shortly thereafter.

According to Costello, immediately on entering Cheetah's, Costello approached Dunlap and hit him in the mouth. Others became involved in the fight, including Seals, a white bouncer. Dunlap fell to the ground during the fight, drew a gun, and started shooting. Dunlap shot Costello in the hip, and Costello, Rice, and others ran out of the building. Costello testified that Seals chased Rice and continued to strike Rice in the back of the head with a blackjack.

According to Costello, he and Rice entered Rice's Tahoe. While Costello was in the Tahoe, bullets came from behind the vehicle and he was shot in the shoulder. Costello testified that it was Seals, not Dunlap, who was shooting at the Tahoe. Costello admitted that as soon as he saw the vehicle's rear window break, he ducked down between the seats. However, Costello testified that he was "a hundred and ten percent sure" that it was Seals who was shooting at the Tahoe. Rice was also shot and told Costello that he was dying. Rice stopped the Tahoe and moved to a rear seat, and Elliott drove the Tahoe to the hospital. Rice was pronounced dead from a gunshot wound to his back.

Abraham testified that he was 15 to 20 feet away from Seals when he heard gunshots. According to Abraham, he did not see anything in Seals's hands, but Abraham saw flashes on both sides of him. Stafford also testified that he did not see Seals with a gun in his hands. According to Stafford, the gunshots fired outside the building were fired from near the street and came from a red truck.

Jason Gartin testified that he was good friends with Rice and Costello. Gartin's testimony was similar to Costello's, but Gartin testified that Dunlap started the fight by swinging at Costello. According to Gartin, someone fired shots in the air during the fight, and everyone started to run outside. Gartin testified that he did not see Dunlap outside the building. Gartin did see Seals holding a gun out and firing it "in front." Gartin saw Seals firing at the back window of the Tahoe. Gartin testified that he also saw Seals reach for a second gun. Gartin got into a friend's vehicle and left.

The prosecutor played portions of surveillance videos from Cheetah's. Detroit Police Sergeant Ron Gibson testified that one portion of the video showed a person laying two guns on a counter. Sergeant Gibson testified that the person in the video was Seals. According to Gibson, there was no surveillance video that captured the shooting itself because the outside camera's lighting and focus was bad.

Sergeant Samuel Mackie testified that he spoke with Seals while investigating the shooting. According to Sergeant Mackie, Seals admitted that he and Dunlap were the only bouncers working that night, but denied that any shooting took place at Cheetah's or that he or Dunlap ever had a gun. Seals also denied that gunshots were fired inside or outside Cheetah's.

Detroit Police Officer Mary Gross testified that she examined the Tahoe on April 14, 2011. According to Officer Gross, she found five suspected bullet impact points on the back of the vehicle. Two impacts were the rear doors. One bullet had passed through the back seat and driver's seat. Officer Gross concluded that the shooter shot the Tahoe from its right rear side. Officer Gross testified that additional bullets could have shattered the vehicle's windows and passed through the Tahoe without leaving marks.

Matthew Fillmore testified that, in April 2011, he overheard a conversation at a gym between a person he was "pretty sure" was Seals and an unknown man. Fillmore heard Seals say that he was working as a bouncer, something happened, and he ended up shooting and killing someone. Fillmore contacted the police and spoke with a sergeant about what he had heard because he thought it was the right thing to do.

## B. THE TRIAL COURT'S FINDINGS

The trial court found that either Dunlap or Seals had killed Rice. It found that, on the basis of the video, after Dunlap fired his gun, Costello's group "all rushed out the door." The trial court found that the video showed Seals chasing after and hitting Rice.

The trial court found that the prosecutor had proved beyond a reasonable doubt that it was Seals who shot Rice, and it noted that it relied on the testimony of Officer Gross, the video of Seals in the kitchen area with guns, and Fillmore's testimony to reach this conclusion. The trial court also noted that there was no testimony from Costello and Gartin that placed Dunlap outside, but that Gartin and Costello both testified that Seals was outside. The trial court also found that Officer Gross's investigation corroborated Gartin's testimony that he saw Seals firing at the vehicle.

The trial court also noted that the kitchen video showed Seals "nonchalantly taking guns . . . from his waist area and so forth and laying them on the counter . . . ." The trial court noted that Seals had denied ever having a gun when Sergeant Mackie questioned him, which showed his consciousness of guilt. The trial court also accepted Fillmore's testimony that he overheard Seals admit to shooting and killing someone.

## II. THE TRIAL COURT'S FINDINGS

### A. STANDARD OF REVIEW

This Court reviews for clear error the trial court's findings of fact following a bench trial.[4] The trial court clearly errs if we are definitely and firmly convinced that it has made a

---

[4] MCR 2.613(C); *People v Farrow*, 461 Mich 202, 208-209; 600 NW2d 634 (1999).

mistake.[5]  Courts review a defendant's claim that the jury's verdict was against the great weight of the evidence to determine whether "the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand."[6]

## B. LEGAL STANDARDS

The presence of conflicting testimony alone does not provide a sufficient ground to discard a verdict as against the great weight of the evidence.[7]  This Court does not resolve questions of credibility on appeal.[8]  This Court must defer to the trier of fact's determination of credibility "unless it can be said that directly contradictory testimony was so far impeached that it was deprived of all probative value or that the [trier of fact] could not believe it, or contradicted indisputable physical facts or defied physical realities . . . ."[9]

## C. IDENTITY

Seals contends that the trial court's finding that Seals was the shooter rested on its clearly erroneous determination that Dunlap was not outside.  We disagree.

The prosecutor has the constitutionally based burden to prove each element of an offense beyond a reasonable doubt.[10]  "[I]dentity is an element of every offense."[11]

We are unable to locate in the record an explicit finding that Dunlap was never outside. Rather, the trial court noted that neither Gartin nor Costello testified that they *saw* Dunlap outside, but they did testify that they saw Seals there.  The trial court also noted that the video evidence showed Seals chasing Rice outside.  Further, the video shows that, while a person matching Dunlap's description is outside Cheetah's, that person does not move toward the area of the building where the shooting occurred until after it appears that the shooting has ended.

Further, even presuming that the trial court erroneously found that Dunlap was not outside, we conclude that the trial court did not rely on this finding to subsequently find Seals guilty.  Here, Gartin testified that he saw Seals standing with his arm extended toward the Tahoe, Officer Gross's testimony about the bullet trajectories corroborated Gartin's testimony of where he saw Seals standing, a video inside Cheetah's shows Seals placing guns on a counter after the shooting, and Fillmore testified that he overheard Seals tell someone that he was a bouncer and

---

[5] *People v Bryant*, 491 Mich 575, 595; 822 NW2d 124 (2012).

[6] *People v Musser*, 259 Mich App 215, 218-219; 673 NW2d 800 (2003).

[7] *People v Lemmon*, 456 Mich 625, 647; 576 NW2d 129 (1998).

[8] *People v Gadomski*, 232 Mich App 24, 28; 592 NW2d 75 (1998).

[9] *Id*. at 645-646 (quotation marks and citation omitted).

[10] *People v Ericksen*, 288 Mich App 192, 196; 793 NW2d 120 (2010).

[11] *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008).

had killed someone. Costello and Gartin's testimonies were not so impeached that they had no probative value or contradicted physical reality. And it is clear from the trial court's statement of its findings that it relied on these complementary pieces of evidence to conclude that Seals, not Dunlap, shot Rice. For these reasons, we conclude that the trial court's finding that Seals was the shooter was not clearly erroneous, and that its verdict was not against the great weight of the evidence.

## D. SELF DEFENSE

Seals next contends that the trial court erred when it found that "self-defense [was] not an issue in this case." We disagree.

Here, defense counsel did not present a defense of self-defense at trial. Rather, he defended Seals on the basis that there was a reasonable doubt concerning the identity of the shooter. Accordingly, self-defense was not, in fact, an issue in the case. We reject Seals's argument that the trial court erred when it stated that self-defense was not an issue.

## E. VOLUNTARY MANSLAUGHTER

Finally, Seals challenges the trial court's finding that the provocation in this case did not reduce the malice of Seals's offense to voluntary manslaughter.

"Voluntary manslaughter is an intentional killing committed under the influence of passion or hot blood produced by adequate provocation and before a reasonable time has passed for the blood to cool."[12] Provocation is necessary to negate the presence of malice.[13] "In addition, the provocation must be adequate, namely, that which would cause the reasonable person to lose control."[14] The determination of what amount of provocation is adequate is a question of fact.[15]

Here, witnesses testified that Costello struck Dunlap, not Seals. Further, the evidence showed that Costello, Rice, and the other club members fled the bar after Dunlap fired a gun. The trial court found that the situation did not constitute voluntary manslaughter "because it was not done in the heat of passion that is required by the law." The trial court found that Seals was not provoked, even if he was angry and frustrated. And the trial court found that Seals's frustration should have ended at the point that Costello left Cheetah's.

While there was evidence of provocation, the reasonableness of the provocation is for the trier of fact to determine. Given the evidence in this case, we are not definitely and firmly

---

[12] *People v Hess*, 214 Mich App 33, 38; 543 NW2d 332 (1995).

[13] *People v Reese*, 491 Mich 127, 144; 815 NW2d 85 (2012), quoting *People v Mendoza*, 468 Mich 527, 535-536; 664 NW2d 685 (2003).

[14] *People v Pouncey*, 437 Mich 382, 389; 471 NW2d 346 (1991).

[15] *Id*.

convinced that the trial court made a mistake when it found that Seals was not so provoked that it reduced the malice of the shooting from murder to voluntary manslaughter.

## III. PROSECUTORIAL MISCONDUCT

### A. STANDARD OF REVIEW

The defendant must "timely and specifically" challenge issues of prosecutorial misconduct before the trial court to preserve them.[16] Here, Seals argues on appeal that the prosecutor offered false arguments in closing. However, Seals did not raise this issue before the trial court. Accordingly, it is unpreserved.

We review unpreserved claims of prosecutorial misconduct for plain error affecting the defendant's substantial rights.[17] An error is plain if it is clear or obvious, and the error affected the defendant's substantial rights if it affected the outcome of the lower court proceedings.[18] We must evaluate the prosecutor's comments in context and in light of the defendant's arguments.[19]

### B. LEGAL STANDARDS

A prosecutor can deny a defendant's right to a fair trial by making improper remarks that infringe on a defendant's constitutional rights or by making remarks that "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process."[20] A defendant's due process rights are violated when the defendant is convicted on the basis of false evidence.[21] The prosecutor has a duty to correct false evidence.[22]

### C. APPLYING THE STANDARDS

Seals contends that the prosecutor committed misconduct when he argued that Dunlap was not outside during the shooting because the video evidence showed that Dunlap was in fact outside during the incident. We disagree.

Here, the prosecutor argued in closing that

---

[16] *People v Unger*, 278 Mich App 210, 234-235; 749 NW2d 272 (2008).

[17] *Id*. at 235; *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

[18] *Carines*, 460 Mich at 763.

[19] *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007).

[20] *Donnelly v DeChristoforo*, 416 US 637, 643; 94 S Ct 1868 (1974). See *People v Bahoda*, 448 Mich 261, 266-267; 531 NW2d 659 (1995).

[21] *People v Herndon*, 246 Mich App 371, 417; 633 NW2d 376 (2001).

[22] *Id*. (internal quotation marks omitted).

there's two bouncers working at Cheetah's, one is white [Seals], and one African American [Dunlap], and not one witness, your Honor testified that Cecil Dunlap was outside during the incident, during the fatal shooting. And you've seen the video, and in the video it's [Seals] who is seen outside after the gunshots erupt inside. So, we see [Seals], and even [Seals's] witnesses testify that he was outside.

In response, defense counsel argued that

we believe that video also shows Mr.—later on, Mr. Dunlap coming back into that rear exit door, back into that location. So when he argues to you that Mr. Dunlap was never outside at the time the shooting occurred, we beg otherwise in terms of what the video evidence shows you.

The prosecutor then argued in rebuttal:

Not one, not one of the defense witnesses said Cecil Dunlap was outside, not outside. In the video we played for you, he's not outside, he's inside.

Review the prosecutor's statements in context, we conclude that the prosecutor did not offer an argument based on false evidence. As discussed above, after our review of the video, it appears that the videos provide evidence that Dunlap was outside *after* the shooting occurred, not during it. Further, even presuming that the video did show Dunlap outside during the shooting, Seals has not shown he was prejudiced because, as stated above, the trial court did not rely solely or even extensively, on the video evidence outside Cheetah's when determining Seals's guilt. Instead, it relied on the video showing Seals inside Cheetah's discarding two guns, evidence of Seals's consciousness of guilt, and the testimonies of Costello, Gartin, and Fillmore.

We conclude that Seals has not shown that the prosecutor's argument constituted a clear error affecting his substantial rights.

## IV. CONCLUSION

We conclude that the trial court did not clearly err when making findings of fact and that its verdict was not against the great weight of the evidence. We also conclude that Seals's assertion of prosecutorial misconduct lacks merit because he has not shown that a plain error affected his substantial rights.

We affirm.

/s/ William C. Whitbeck
/s/ E. Thomas Fitzgerald
/s/ Christopher M. Murray