PEOPLE v POUNCEY

Docket No. 88322. Argued January 8, 1991 (Calendar No. 4). Decided
    June 24, 1991. Rehearing denied *post,* 1285.

Ollie J. Pouncey was convicted by a jury in the Detroit Recorder's
    Court, Geraldine B. Ford, J., of second-degree murder and of
    possession of a firearm during the commission of a felony. The
    Court of Appeals, MacKenzie, P.J., and Marilyn J. Kelly and
    T. M. Burns, JJ., reversed in an opinion per curiam, holding
    that there was sufficient evidence of provocation and passion to
    support an instruction on voluntary manslaughter (Docket No.
    106520). The people appeal.

    In a unanimous opinion by Justice Mallett, the Supreme
Court *held:*

    The evidence offered at trial did not support the giving of the
requested instructions on voluntary manslaughter.

    1. The duty of the court to instruct the jury regarding the
law applicable to the case depends on the evidence presented at
trial. A verdict will not be set aside for failure to instruct on
any point of law unless the accused requests the instruction.
The record must be examined in order to determine whether
an instruction regarding a cognate lesser included offense must
be given. If the evidence would support a conviction of the
cognate lesser offense, then the judge, if requested, must give
the instruction.

    2. Murder and manslaughter are both homicides and share
the element of being intentional killings. However, provocation,
which characterizes manslaughter, separates it from murder.
While separate, voluntary manslaughter is a cognate lesser
included offense of murder. The test for voluntary manslaugh-
ter comprises several components: First, the defendant must
kill in the heat of passion; second, the passion must be caused
by an adequate provocation; third, there cannot be a sufficient
cooling-off period.

    3. The provocation necessary to mitigate a homicide from
murder to manslaughter is that which causes the defendant to
act out of passion rather than reason. The provocation must be

References
Am Jur 2d, Homicide §§ 320, 452, 511, 519, 530.

adequate, namely, that which would cause a reasonable person to lose control. The determination what is reasonable provocation is a question of fact. However, when, as a matter of law, no reasonable jury could find that the provocation was adequate, the judge may exclude evidence of provocation.

4. In this case, the defendant's ability to reason was not blurred by passion and his emotional state did not reach a level that rendered him unable to act deliberately. The claimed provocation was not adequate, and there was a sufficient cooling-off period. The evidence adduced at trial would not support finding the defendant guilty of voluntary manslaughter, and the trial judge was correct in refusing to give the requested instruction.

Reversed.

183 Mich App 216; 454 NW2d 130 (1989) reversed.

HOMICIDE — JURY INSTRUCTIONS — SECOND-DEGREE MURDER — VOLUNTARY MANSLAUGHTER.

In a prosecution of second-degree murder, where, as a matter of law, no reasonable jury could find that claimed provocation was adequate to mitigate the homicide to voluntary manslaughter, the court may exclude evidence of the provocation and decline to instruct the jury regarding voluntary manslaughter (MCL 750.317, 750.321; MSA 28.549, 28.553).

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief, Criminal Division, Research, Training and Appeals, and *Olga Agnello,* Assistant Prosecuting Attorney, for the people.

*Sean M. Taylor* for the defendant.

MALLETT, J.

### INTRODUCTION

We granted leave in this case to determine whether the evidence described by the appellee as provocation was sufficient to require the trial judge to give the requested voluntary manslaughter instructions.

We reverse the decision of the Court of Appeals, reinstate the decision of the trial court, and hold that the evidence at trial did not support giving this instruction.

FACTS

The defendant-appellee, Ollie Pouncey, was convicted of one count of second-degree murder, MCL 750.317; MSA 28.549, and one count of possessing a firearm at the time of commission or attempted commission of a felony, MCL 750.227b; MSA 28.424(2).

The conviction arose out of an altercation that occurred on May 4, 1987. The defendant and his two friends, Mr. White and Mr. Johnston, were at Mr. White's home. They left Mr. White's house, drove around the corner to the home of Mr. Bland and accused him of stealing Mr. White's car. When Mr. Bland denied stealing the car, the defendant and his friends returned to Mr. White's home. As they pulled into the driveway of Mr. White's home, Mr. Bland, accompanied by his older brother and the victim, Steven Powers, approached.

Mr. Bland repeatedly denied knowing anything about the theft. At this point, Mr. White went into his house and did not come back outside until after the shooting. The defendant, as well as Mr. Johnston, the two Bland brothers, and Mr. Powers, remained outside.

As the argument continued, Mr. Powers threatened to put the defendant "on his head" and called the defendant names.[1] The decedent walked to-

---

[1] At trial, the defendant testified as follows:

A. . . . Steven Powers had said, what is he [Mr. White] going in the house for. . . . He [the decedent] called him a name, and

wards the defendant, but Mr. Bland held the decedent back.[2] The defendant said "don't walk up on me." There were no blows struck; indeed, there was no physical contact of any kind between the decedent, the defendant, or anyone else. The defendant testified that the decedent was not armed.

After this verbal exchange, the defendant walked into the house. He went to the back of the house and retrieved a gun from a closet. He then came back outside, approximately thirty seconds later, carrying a shotgun. As he was coming out, he instructed Mr. Johnston to hit Mr. Powers with a monkey wrench. Mr. Johnston swung the wrench, but the decedent ducked out of the way. At that point, the defendant fired one shot, hitting Mr. Powers in the abdomen. Mr. Johnston ran home, as did the two Bland brothers, who called the police. The defendant and Mr. White drove off in the defendant's car.

The defendant was charged with first-degree murder and possession of a firearm during the commission of a felony. On the murder charge, the judge instructed the jury on first-degree murder, second-degree murder, involuntary manslaughter, and careless and reckless use of a firearm resulting in death. The judge refused the defendant's

I said, man, don't worry, he ain't going in the house for you . . . . [H]e [the decedent] said, let me tell you something, you little young punks, like that, and he just started going off from there.

*Q.* Okay. What else did Steven Powers say?

*A.* He just was calling us punks, cowards, whores, bitches, and all like that.

\* \* \*

*A.* . . . And so Steven Powers . . . said, I'm going to beat this little punk's ass . . . .

[2] There was conflicting testimony at trial regarding whether the decedent had his fists balled up as he approached the defendant. This case does not present any claim of self-defense, and therefore it is unnecessary to resolve this conflict.

request for an instruction on voluntary manslaughter, finding that the evidence offered at trial did not support this offense.[3] On September 22, 1987, the jury found the defendant guilty of second-degree murder and felony-firearm. He was sentenced to a term of ten to fifteen years for the murder conviction and a mandatory term of two years for the felony-firearm conviction.

The Court of Appeals reversed the decision of the trial court and remanded for a new trial. 183 Mich App 216; 454 NW2d 130 (1989). The panel believed there was sufficient evidence of provocation and passion in the record to support an instruction on voluntary manslaughter. The panel based its finding on various witnesses' testimony regarding the argument between the defendant and the decedent. *Id.* at 219.

This Court granted leave to appeal by order dated July 18, 1990, to consider whether the trial judge erred in not instructing on voluntary manslaughter, 435 Mich 868 (1990).

I

It is the duty of the court to "instruct the jury as to the law applicable to the case . . . ." MCL 768.29; MSA 28.1052. However, a verdict shall not be set aside where the court fails to instruct on any point of law unless the accused requests such instruction. MCL 768.29; MSA 28.1052.

It is undisputed that the defense counsel in this case made a proper request for an instruction on voluntary manslaughter. Therefore, the issue before us is whether the trial court's refusal to instruct on voluntary manslaughter was error.

---

[3] *The Court:* I think the evidence certainly with particular emphasis on the testimony of the Dfendant [sic] would indicate that manslaughter simply does not apply here.

The court's duty to instruct on the law applicable to the case depends on the evidence presented at trial. This case deals with a cognate lesser included offense.[4] The test to determine whether an instruction on a cognate lesser included offense must be given is as follows: The record must be examined, and if there is evidence which would support a conviction of the cognate lesser offense, then the trial judge, if requested, must instruct on it. *People v Van Wyck,* 402 Mich 266, 270; 262 NW2d 638 (1978); *People v Van Wyck (On Remand),* 83 Mich App 581; 269 NW2d 233 (1978).[5] Under this standard, there must be more than a modicum of evidence; there must be sufficient evidence that the defendant could be convicted of the lesser offense. Only then does the judge's failure to instruct on the lesser included offense constitute error. 402 Mich 270. If the evidence presented could not support a conviction of the lesser offense, then the judge should not give the requested instruction. See *People v Beach,* 429 Mich 450, 480; 418 NW2d 861 (1988).

To determine whether the judge erred in not instructing on voluntary manslaughter, we must ascertain whether there was evidence presented at the defendant's trial which would support a conviction of voluntary manslaughter.

---

[4] A cognate lesser offense shares several elements and is in the same class of offenses as the greater crime. However, it differs from the greater crime in that it contains some elements not found in the higher offense. *People v Ora Jones,* 395 Mich 379, 387; 236 NW2d 461 (1975).

[5] The federal standard is similar:

In a case where some of the elements of the crime charged themselves constitute a lesser crime, the defendant, if the evidence justified it, would no doubt be entitled to an instruction which would permit a finding of guilt of the lesser offense. [*Berra v United States,* 351 US 131, 134; 76 S Ct 685; 100 L Ed 1013 (1956). See also FR Crim P 31(c).]

II

A

MCL 750.321; MSA 28.553 specifies the punishment for the crime of manslaughter. However, it is the common law which defines the crime. Voluntary manslaughter, an intentional killing, has been defined by this Court as follows:

> [I]f the act of killing, though intentional, be committed under the influence of passion or in heat of blood, produced by an adequate or reasonable provocation, and before a reasonable time has elapsed for the blood to cool and reason to resume its habitual control, and is the result of the temporary excitement, by which the control of reason was disturbed . . . then the law, out of indulgence to the frailty of human nature . . . regards the offense as of a less heinous character than murder, and gives it the designation of manslaughter. [*Maher v People,* 10 Mich 212, 219 (1862).]

Murder and manslaughter are both homicides and share the element of being intentional killings. However, the element of provocation which characterizes the offense of manslaughter separates it from murder. Murder and manslaughter are separate offenses, but, as noted above, voluntary manslaughter is a *cognate lesser included* offense of murder.

The above definition of voluntary manslaughter encompasses several components which comprise the test for voluntary manslaughter: First, the defendant must kill in the heat of passion. Second, the passion must be caused by an adequate provocation. Finally, there cannot be a lapse of time during which a reasonable person could control his passions. *Maher* at 219-220. See also Perkins & Boyce, Criminal Law (3d ed), p 85.

B

The provocation necessary to mitigate a homicide from murder to manslaughter is that which causes the defendant to act out of passion rather than reason. *People v Townes,* 391 Mich 578, 590; 218 NW2d 136 (1974). One commentator interprets the law as requiring that the defendant's emotions be so intense that they distort the defendant's practical reasoning:

> The law does not excuse actors whose behavior is caused by just any . . . emotional disturbance. . . . Rather, the law asks whether the victim's provoking act aroused the defendant's emotions to such a degree that the choice to refrain from crime became difficult for the defendant. The legal doctrine reflects the philosophical distinction between emotions that only cause choice and emotions so intense that they distort the very process of choosing.[6]

In addition, the provocation must be adequate, namely, that which would cause the reasonable person to lose control. *Id.* at 590. Not every hot-tempered individual who flies into a rage at the slightest insult can claim manslaughter.[7] The law cannot countenance the loss of self-control; rather, it must encourage people to control their passions. Perkins & Boyce, Criminal Law, p 84.

---

[6] Moore, *Causation and the excuses,* 73 Cal L R 1091, 1132 (1985).

[7] If reasonableness were not required, a man who flew into a rage and killed a woman for refusing to have sex with him would be guilty of nothing more than manslaughter. Furthermore, when the law rewards irrational behavior, it encourages people to feign irrationality. Thus, if the man in the above hypothetical had coolly decided to kill the woman as punishment for her refusal, he would be encouraged to feign rage in order to mitigate his crime. [Loewy, *Culpability, dangerousness, and harm: Balancing the factors on which our criminal law is predicated,* 66 NC L R 283, 302-303 (1988).]

The determination of what is reasonable provocation is a question of fact for the factfinder. *Id.* at 589. However, the judge does play a substantial role. The judge furnishes the standard of what constitutes adequate provocation, i.e., that provocation which would cause a reasonable person to act out of passion rather than reason. When, as a matter of law, no reasonable jury could find that the provocation was adequate, the judge may exclude evidence of the provocation. *Maher, supra* at 222.

### III

A review of the evidence establishes that none of the three prongs necessary for a finding of voluntary manslaughter are present. There is no evidence that the defendant was in a highly inflamed state of mind: he testified that at the time that he went into the house to retrieve the gun, he was not angry.[8] This reveals that the defendant's ability to reason was not blurred by passion; his emotional state did not reach such a level that he was unable to act deliberately. Indeed, he stated that he was not angry at all. Even if he was scared and confused, his decision to retrieve the gun was a deliberate and reasoned act.[9]

---

[8] *Q.* What was your state [of] mind when you ran into the house?
*A.* Scared, confused, worrying about what they were going to do to Eric.
*Q.* Were you angry?
*A.* No, not really. No.
*Q.* You weren't angry?
*A.* No.
*Q.* This man had told you he was going to beat you up and you weren't angry?
*A.* No, not really.

[9] The testimony indicated that the young men argued outside Mr.

Furthermore, the claimed provocation in this case consists only of words, which other courts generally have held do not constitute adequate provocation, *Allen v United States,* 164 US 492; 17 S Ct 154; 41 L Ed 528 (1896), and in some instances words alone did not even justify an assault and battery, *Goucher v Jamieson,* 124 Mich 21; 82 NW 663 (1900). However, words of an informative nature, rather than mere insults, have been considered adequate provocation. See LaFave & Scott, Criminal Law, § 76, pp 576-577. But this is not such a case, for this case involves insulting words, not words of an informational character. Nonetheless, we decline to issue a rule that insulting words per se are never adequate provocation. Instead, we reiterate that what constitutes adequate provocation is a factual question, and on these facts, the provocation was not adequate.

The evidence offered at trial painted a picture of a verbal fracas between six young men. The decedent insulted the defendant, but there were no punches thrown. There was no physical contact of any kind between the defendant, the decedent, or any of the six.[10] The judge was absolutely correct in ruling that as a matter of law there was insuffi-

---

White's house. After the defendant and the decedent exchanged words, the defendant left the scene. He went into the house, walked to the back bedroom, and retrieved the gun from a closet. He walked back outside and shot Mr. Powers. The defendant testified that he got the gun for the purpose of scaring the others away. The defendant's actions in retrieving the gun, and his purpose in doing so, were deliberate. He was not so inflamed that he lost his self-control. He was not provoked as that term is used in defining voluntary manslaughter.

[10] *Q.* Was there any physical contact?
*A. [Derrick Bland]:* No, there wasn't.
*Q.* Did Mr. Powers [decedent] touch anybody?
*A.* No, he didn't.
*Q.* Did Mr. Pouncey touch anybody?
*A.* No, he didn't.

cient evidence to establish an adequate provocation.

Finally, sufficient time passed to constitute a "cooling-off period." After a few insults were exchanged, the defendant went into the house, a safe harbor. There was no evidence that the defendant was compelled to go back outside by anyone. The defendant could have stayed in the house, as did Mr. White. Instead, the defendant chose to retrieve the shotgun from a closet in the back of the house and chose to go back outside. Once outside, shotgun in hand, he instructed Mr. Johnson to hit Mr. Powers with the wrench. When that failed, the defendant shot and killed Mr. Powers.

The evidence adduced at trial would not support finding the defendant guilty of voluntary manslaughter. This is the finding that the trial judge made in deciding not to give the requested instruction on voluntary manslaughter.[11] Because of this, the trial judge was correct in refusing the requested instruction on voluntary manslaughter. To instruct the jury on an offense not supported by the evidence would confuse the jury, and be "a distortion of the factfinding process." *Beach, supra* at 480.

### CONCLUSION

The law of voluntary manslaughter developed as a means of taking into consideration the weaknesses of human beings. Key to any finding of voluntary manslaughter is evidence of adequate provocation that a reasonable factfinder could conclude that the defendant, overcome by emotion, could not choose to refrain from the crime. Adequate provocation does not excuse or justify mur-

---

[11] *"The Court:* I think the evidence . . . would indicate that manslaughter simply does not apply here."

der, but rather designates one guilty of manslaughter less culpable than one guilty of murder.

We reverse the decision of the Court of Appeals.

CAVANAGH, C.J., and LEVIN, BRICKLEY, BOYLE, RILEY, and GRIFFIN, JJ., concurred with MALLETT, J.