# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

STEVE TREADWELL, JR.,

       Defendant-Appellant.

UNPUBLISHED
June 27, 2017

No.  331310
Wayne Circuit Court
LC No.  15-004946-01-FC

Before:  JANSEN, P.J., and MURPHY and BORRELLO, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial convictions of voluntary manslaughter, 750.321, felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.  Defendant was sentenced to of 4½ to 15 years' imprisonment for the manslaughter conviction, two to five years' imprisonment for the felon in possession of a firearm conviction, and two years' imprisonment for the felony-firearm conviction.  For the reasons set forth in this opinion, we affirm.[1]

## I.  BACKGROUND

This appeal arises from the shooting death of Raychel McCoy on April 29, 2014 in the City of Detroit.  On that date, defendant requested that his brother Odell and Odell's girlfriend Eubeka Strickland accompany defendant's live-in girlfriend Malayshia Melton[2] in dropping of defendant's children to McCoy's mother's home.  Defendant had children with both McCoy and Melton and in the past there had been violent incidents between Melton and McCoy.

---

[1] We note that in footnotes throughout their brief plaintiff attempts to file a cross appeal.  By way of example, plaintiff requests of this Court that we: (1) change the name of the defendant to reflect defendant's testimony; (2) change the sentencing guidelines; (3) change the judgment of sentence.  Because plaintiff failed to file a cross appeal or otherwise attempt to comply with our court rules, we did not consider any of plaintiff's footnote requests.

[2] Melton was initially a co-defendant in this case.  However, prior to trial, she accepted a plea deal for which she was sentenced to probation in exchange for testifying.

On that date, Odell, Strickland and Melton went to McCoy's mother's house whereupon McCoy allegedly tried to stab Melton through the open driver's side window. Melton tried to disarm McCoy and when that did not work, Melton pulled her nine-millimeter and aimed it at McCoy. According to testimony McCoy backed off the automobile and the three drove back to the home where defendant and Melton lived.

Apparently, McCoy arrived at the home before ODell, Strickland and Melton. According to a neighbor of defendant, McCoy came speeding into defendant's driveway. The neighbor saw McCoy leave her vehicle where she was confronted by defendant. Testimony next reveals that when the three arrived back at defendant's home, defendant and McCoy were arguing. While doing so, Melton testified that she placed her gun in a downstairs closet. While the arguing was continuing, the neighbor heard McCoy ask "so you gonna get a gun," and the sound of glass shattering. According to Melton, McCoy threw a brick through the dining room window causing Melton to throw a brick at McCoy's windshield. According to Melton, defendant must have run into the house and grabbed her gun. According to testimony from the neighbor, he heard a scream and shots fired, one of which came through his dining room window. According to the neighbor, he saw McCoy lying on the ground but did not see Melton. The neighbor testified that he did not see a gun or who shot the gun.

According to Melton, defendant came into the house, put the gun back in the closet and told Melton to confess to the crime because she did not have a criminal record. Melton testified that defendant then left the house. When the police arrived, Melton told them that she had shot McCoy.

Additional testimony varied, quite significantly. One of defendant's minor sons testified that he saw Melton shoot McCoy. Strickland testified that she saw defendant shoot into the air. Strickland testified that they could see McCoy hunched over as they were driving away and that defendant eventually ended up in the car somewhere down the street from his home and dropped him off at his uncle's house.

The trial court found defendant guilty and sentenced him as stated above. This appeal then ensued.

II. ANALYSIS

On appeal, defendant first argues that there was insufficient evidence to convict him of voluntary manslaughter and felony-firearm. This Court will review a challenge to the sufficiency of the evidence in a bench trial de novo. *People v Lanzo Constr Co*, 272 Mich App 470, 473; 726 NW2d 746 (2006). "The evidence is viewed in a light most favorable to the prosecution to determine whether the trial court could have found that the essential elements of the crime were proven beyond a reasonable doubt." *Id*. at 474. It is the role of the trier of fact to weigh evidence and evaluate the credibility of witnesses. *People v Kanaan*, 278 Mich App 594, 618-619; 751 NW2d 57 (2008).

When sufficiency of the evidence is challenged, "the question on appeal is whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Hardiman*, 466 Mich 417, 421; 646 NW2d 158 (2002). Further, "[c]ircumstantial evidence and

the reasonable inferences it permits are sufficient to support a conviction, provided the prosecution meets its constitutionally based burden of proof beyond a reasonable doubt." *People v Ericksen*, 288 Mich App 192, 196; 793 NW2d 120 (2010).

Under Michigan law, the manslaughter statute, MCL 750.321, encompasses two types of manslaughter at common law: voluntary and involuntary. *People v Townes*, 391 Mich 578, 588-89; 218 NW2d 136 (1974). Though the sentencing for manslaughter is outlined in the aforementioned statute, courts must look to common law to explain the elements. *Id*. at 588. The Michigan Supreme Court has defined voluntary manslaughter as follows:

> [I]f the act of killing, though intentional, be committed under the influence of passion or in heat of blood, produced by an adequate or reasonable provocation, and before a reasonable time has elapsed for the blood to cool and reason to resume its habitual control, and is the result of the temporary excitement, by which the control of reason was disturbed . . . then the law, out of indulgence to the frailty of human nature . . . regards the offense as of a less heinous character than murder, and gives it the designation of manslaughter. [*People v Pouncey*, 437 Mich 382, 388; 471 NW2d 346 (1991) (quotations and citations omitted).]

Put another way, "to show voluntary manslaughter, one must show that the defendant killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions." *People v Mendoza*, 468 Mich 527, 535; 664 NW2d 685 (2003). While murder and voluntary manslaughter share the element of intent, the presence of provocation, not malice, distinguishes voluntary manslaughter. *Pouncey*, 437 Mich at 388-389. However, "provocation is not an element of voluntary manslaughter." *Mendoza*, 468 Mich at 536. Instead, "provocation is the circumstance that negates the presence of malice." *Id*.

Our review of the record evidence presented in this matter leads us to conclude that legally sufficient evidence was presented at trial such that the trial court could rationally find defendant guilty of voluntary manslaughter beyond a reasonable doubt. Melton testified that defendant had removed her gun from the downstairs closet and had gone outside to continue arguing with McCoy while Melton remained inside with the children. Melton also testified that defendant returned to the house immediately after the shooting, returned her gun to the closet, and told her to lie to the police about who was responsible for McCoy's death. Though defendant argues on appeal that Melton's testimony was not credible—and indeed, that Melton herself was the "logical" killer—this argument has no bearing on this Court's consideration. As referenced above, "[t]his Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *Kanaan*, 278 Mich App at 619.

In addition to Melton's testimony, there were also the observations made by defendant's neighbor. According to the neighbor, defendant and McCoy were arguing outside just minutes prior to the shooting; he even heard McCoy ask if defendant was planning on going to get a gun. Just a short time later, the neighbor heard three or four shots, and saw McCoy had fallen on the ground outside. Furthermore, though Eubeka Strickland stated under the court's questioning that she did not hear gunshots or see defendant shoot McCoy, she admitted she observed defendant shooting "into the air." A rational trier of fact could infer from this testimony that defendant was

the shooter who fatally shot McCoy.  And as this Court has stated, "the reasonable inferences [circumstantial evidence] permits are sufficient to support a conviction." *Ericksen*, 288 Mich App at 196.  Therefore, relevant testimony from these witnesses provided sufficient evidence for the trial court to infer that defendant in fact killed McCoy.

As far as the remaining elements of voluntary manslaughter—that the killing occurred in the heat of passion, with adequate provocation, with no cooling off period, *Mendoza*, 468 Mich at 535—the trial court repeatedly noted evidence of the contentious situation between defendant, Melton, and McCoy.  By several accounts, all three parties were embroiled in heated arguments throughout the altercation, all of which provided ample evidence for the trial court to find that McCoy's shooting occurred in the heat of the moment.  Though this Court has held that provocation is not an element of voluntary manslaughter, but gives rise to the circumstance that mitigates the killing from murder to manslaughter, *id.* at 536, there was sufficient evidence offered to support a finding of provocation on defendant's behalf as well.  For example, Melton testified that McCoy had thrown a brick through defendant's dining room window.  In fact, this brick injured defendant and Melton's son.  Glass was shattering, tempers were flaring; thus, a rational trier of fact could conclude that defendant was adequately provoked.  See *Pouncey*, 437 Mich at 389-390.

Finally, the timing element—where case law explaining voluntary manslaughter disallows a reasonable time to cool down before the killing occurred, *People v Fortson*, 202 Mich App 13, 19; 507 NW2d 763 (1993) ("Voluntary manslaughter is an intentional killing committed . . . before a reasonable time has passed for the blood to cool and reason to resume its habitual control.")—is not disputed.  Testimony by both Melton and the neighbor reveals that the entire altercation, from the time McCoy arrived at defendant's house to the time of the shooting, all occurred within a matter of minutes.  Within this short time frame, defendant did not have the opportunity to cool down and resume rational thought.  Thus, there was sufficient evidence presented at trial to satisfy all the elements of voluntary manslaughter, such that a rational trier of fact could find defendant guilty.

Notably, defendant does not argue on appeal that one or more elements of voluntary manslaughter were not sufficiently established at trial; rather, defendant argues that Melton was the more logical killer, and much more likely to be guilty of causing McCoy's death than defendant.  However, this Court's review is limited to whether sufficient evidence was presented at trial to support a rational trier of fact's finding of defendant's guilt beyond a reasonable doubt.  See *Ericksen*, 288 Mich App at 196.  Having found that such evidence exists, defendant is not entitled to relief on this issue.

Defendant also challenges the sufficiency of the evidence for his felony-firearm conviction.  Under the felony-firearm statute, "[a] person who carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony . . . is guilty of a felony and shall be punished by imprisonment. . . ."  MCL 750.227b.  "The elements of felony-firearm are that the defendant possessed a firearm during the commission, or the attempt to commit, a felony.  One must carry or possess the firearm when committing or attempting to commit a felony." *People v Johnson*, 293 Mich App 79, 82-83; 808 NW2d 815 (2011) (quotations and citations omitted).  Since sufficient evidence existed to convict defendant of voluntary manslaughter, as discussed *supra,* and the felony in this case was carried out with a

firearm, it follows that both elements discussed above were met. Therefore, sufficient evidence was established to convict defendant of felony-firearm.

Next, defendant argues his waiver of a jury trial was not knowing and voluntary, and a new trial is thus required. "For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). On the first day of trial, before opening statements were given, defendant's counsel informed the trial court judge that defendant wished to withdraw his waiver of a jury trial, which the court denied. As such, because this issue was "raised, addressed, and decided by the lower court[,]" *id.*, this issue was preserved.

"The trial court's determination that a defendant validly waived his right to a jury trial is reviewed for clear error." *People v Leonard*, 224 Mich App 569, 595; 569 NW2d 663 (1997). "Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *People v Kurylczyk*, 443 Mich 289, 303; 505 NW2d 528 (1993).

"The adequacy of a jury trial waiver is a mixed question of fact and law." *People v Cook*, 285 Mich App 420, 422; 776 NW2d 164 (2009). All criminal defendants are guaranteed the right to a trial by a jury, as prescribed by the United States Constitution. *Id.* "However, with the consent of the prosecutor and the approval of the trial court, a defendant may waive his right to a jury trial." *Id.* The Michigan Court Rules have codified the procedural requirements of a defendant's waiver of a jury trial as follows:

> Before accepting a waiver, the court must advise the defendant in open court of the constitutional right to trial by jury. The court must also ascertain, by addressing the defendant personally, that the defendant understands the right and that the defendant voluntarily chooses to give up that right and to be tried by the court. A verbatim record must be made of the waiver proceeding. [MCR 6.402(B).]

As the rule above states, a defendant's waiver must be knowing and voluntary. MCR 6.402(B). A court's compliance with the requirements listed *supra* ensures that a defendant's waiver of a jury trial is knowing and voluntary; such compliance creates a presumption that a defendant's waiver was indeed knowingly and voluntarily made. *Id.* See also *People v Mosly*, 259 Mich App 90, 96; 672 NW2d 897 (2003).

In the case before us, the record reveals that the trial court complied with the requirements outlined in MCR 6.402(B). It appears that defendant's argument is based on an incomplete transcript of the waiver taking. The amended transcript, as displayed below, reveals the full record of defendant's jury waiver. Though defendant asserts that the record does not reflect that any oral colloquy occurred between himself and the trial judge, the amended transcript of the November 20, 2015 hearing demonstrates otherwise:

> *THE COURT*: What is your full name?
>
> *DEFENDANT TREADWELL*: Steve Treadwell.
>
> *THE COURT*: What is your address?

*DEFENDANT TREADWELL*:  It's 18653 Kelly Street.

*THE COURT*:  What is your age?

*DEFENDANT TREADWELL*:  Twenty-seven.

*THE COURT*:  How far did you go in school?

*DEFENDANT TREADWELL*:  The ninth grade.

*THE COURT*:  Other than being locked up and the pressure of being incarcerated, are you under any other kind of undue pressure?

*DEFENDANT TREADWELL*:  No.

*THE COURT*:  Your attorney, Jennifer Colthirst, tells me that you want to waive your right to a trial by jury and allow me to be the finder of fact.  Do you agree with that?

*DEFENDANT TREADWELL*:  Yes.

*THE COURT*:  Do you understand that a finding of guilt or innocence by me has the same force and effect as if you were found guilty or innocent by a jury.  Do you understand that?

*DEFENDANT TREADWELL*:  Yes.

*THE COURT*:  And, you understand that by tendering that waiver to the court that you and your attorney have executed here today, I will make a determination as to your guilt or innocence, and a determination of guilt or innocence by me has the same force and effect as if you were found guilty or innocent by a jury?  Do you understand that?

*DEFENDANT TREADWELL*:  Yes.

*THE COURT*:  Is it your desire to do that?

*DEFENDANT TREADWELL*:  Yes.

*THE COURT*:  Now, even though I expect you to counsel and advise with Miss Colthirst, as your lawyer, the ultimate decision as to whether or not you waive your right to a trial by jury has to be yours.  Do you understand that?

*DEFENDANT TREADWELL*:  Yes.

*THE COURT*:  Is that your desire?

*DEFENDANT TREADWELL*:  Yes.

*THE COURT*: Okay. I'll accept his waiver as being knowingly and intelligently waived.

*MS. COLTHIRST*: Thank you, Your Honor.

In reviewing the exchange above, it is evident that the trial court complied with MCR 6.402(B). Additionally, we find the trial court's line of questioning is similar, if not more in depth, than other colloquies this Court has accepted as conforming to the court rule in the past. See, e.g., *People v Shields*, 200 Mich App 554, 560-61; 504 NW2d 711 (1993); *People v Reddick*, 187 Mich App 547, 550; 468 NW2d 278 (1991).

Furthermore, defendant contends that his right to a jury trial was not knowingly waived because there is no record of his understanding of the nature of a jury trial—for example, that a jury's verdict must be unanimous. Relevant case law reveals this argument carries no weight with this Court: "[A] trial court is not required to explain the unanimity required in a jury trial as compared to a bench trial . . . ." *Leonard*, 224 Mich App at 596. Rather, what is necessary for a valid jury trial waiver is evidence showing that defendant both understood he had a right to a trial by jury, and that defendant freely and voluntary waived that right. *Reddick*, 187 Mich App at 550. Upon questioning, defendant repeatedly affirmed his desire to waive his right to a jury trial and demonstrated his understanding of the matter. The trial court record reflects that the necessary requirements were met at the time the waiver was made, and thus, defendant's claims to the contrary are meritless. Accordingly, defendant is not entitled to relief on this issue.

Affirmed.

/s/ Kathleen Jansen
/s/ William B. Murphy
/s/ Stephen L. Borrello