*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 14, 2020

Plaintiff-Appellee,

v

No. 335165
Genesee Circuit Court
LC No. 15-037150-FC

NOAH TANIAL PARKER,

Defendant-Appellant.

ON REMAND

Before: MURRAY, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

This matter returns to this Court by order of our Supreme Court for reconsideration of defendant's challenges to the sentence imposed for his voluntary manslaughter conviction, in light of *People v Beck*, 504 Mich ___; __ NW2d ___ (2019) (Docket No. 152934). *People v Parker*, 934 NW2d 224 (Mich, 2019). We vacate the sentence and remand for resentencing.

The facts of this matter have been detailed in our previous opinion. In brief, defendant shot Thomas Baker twice in the head, killing him. Defendant admitted that he shot and killed Baker following a dispute about the quantity of marijuana involved in drug deal between defendant and Baker, but claimed that Baker was wielding a machete at the time he shot him. Defendant was originally charged, in relevant part, with first-degree premeditated murder, MCL 750.316(1)(a), but the jury acquitted him of that offense and convicted him of voluntary manslaughter, MCL 750.321.

The trial court imposed a minimum sentence of 120 months' imprisonment for the voluntary manslaughter conviction. This represented a 34-month departure from the recommended minimum sentencing guidelines range of 43 to 86 months' imprisonment. On appeal, defendant argued, in part, that he was entitled to resentencing because the trial court based the manslaughter sentence on an impermissible independent finding of guilt on the first-degree murder charge of which the jury acquitted him. A majority of this Court rejected defendant's argument and affirmed his sentence. See *People v Parker*, unpublished per curiam

opinion of the Court of Appeals, issued March 27, 2018 (Docket No. 335165). Defendant appealed and, in lieu of granting leave to appeal, the Supreme Court vacated that part of this Court's judgment and remanded for reconsideration in light of its decision in *Beck*, as set forth above. *People v Parker*, 934 NW2d 224 (Mich, 2019).

In *Beck*, the defendant was convicted on charges of felon in possession of a firearm, fourth offense, and felony-firearm, second offense. *Beck*, 504 Mich at ___; slip op at 3. But the jury had acquitted the defendant of open murder, among other charges. *Id*. Although the sentencing guidelines range for the felon-in-possession conviction was 22 to 76 months, the trial court sentenced defendant to 240 to 400 months' imprisonment. *Id*. The trial court's reasoning for imposing the sentence included that it found by a preponderance of the evidence that the defendant had committed the murder of which the jury had acquitted him. *Id*.

The *Beck* defendant appealed and argued, in part, that the trial court's reliance on conduct of which he was acquitted to increase his sentence violated his constitutional rights under the Sixth and Fourteenth Amendments of the United States Constitution. *Id*. at 6. This Court remanded the matter to the circuit court for further sentencing proceedings. *Id*. at 5. The defendant, however, sought leave to appeal to our Supreme Court and, in lieu of granting leave to appeal, *id*. at 5, the Supreme Court held that "due process bars sentencing courts from finding by a preponderance of the evidence that a defendant engaged in conduct of which he was acquitted," *id*. at 22. The *Beck* Court defined the term "acquitted conduct" as conduct that "has been formally charged and specifically adjudicated by a jury." *Id*. at 13. The Court elaborated:

> When a jury has made no findings (as with uncharged conduct, for example), no constitutional impediment prevents a sentencing court from punishing the defendant as if he engaged in that conduct using a preponderance-of-the-evidence standard. But when a jury has specifically determined that the prosecution has not proven beyond a reasonable doubt that a defendant engaged in certain conduct, the defendant continues to be presumed innocent. "To allow the trial court to use at sentencing an essential element of a greater offense as an aggravating factor, when the presumption of innocence was not, at trial, overcome as to this element, is fundamentally inconsistent with the presumption of innocence itself." [*State v*] *Marley*, 321 NC [415,] at 425[; 364 SE2d 133 (1988)].
>
> Unlike the uncharged conduct in *McMillan* [*v Pennsylvania*, 477 US 79; 106 S Ct 2411; 91 L Ed 2d 67 (1986)], conduct that is protected by the presumption of innocence may not be evaluated using the preponderance-of-the-evidence standard without violating due process. [*Id*. at 18-19 [footnotes omitted]).]

Because the trial court in *Beck* "punished the defendant more severely on the basis of the judge's finding by a preponderance of the evidence that the defendant committed the murder of which the jury had acquitted him," *id*. at 21, the defendant's sentence for felon-in-possession was vacated and the case was remanded to the trial court for resentencing consistent with the Court's opinion, *id*. at 22.

In this case, as in the *Beck* case, it appears that the trial court's reasoning for imposing the manslaughter sentence included a finding by a preponderance of the evidence that defendant had committed the first-degree premeditated murder of which the jury had acquitted him. Before imposing sentence, the trial court made a number of remarks indicating the trial court's reasoning and justification for defendant's sentence. In response to a statement by Baker's brother that Baker's death was unfair and it was unfathomable that defendant needed to kill Baker given that the machete was not found on Baker, the trial court engaged in the following dialogue:

> *The Court*: [I'll be] [h]onest with you . . . I don't know why the jury, um, came back with manslaughter in this case. Uh, there was, in my opinion, no basis for it, uh, because that machete was up on the stairs there against the wall and, if [Baker] . . . had it in his hands when he was shot in the head, that machete would've been [lying] next to him just like the drugs were.

> [*Baker's Brother*]: Mmm-hmm.

> *The Court:* So I just feel that jury didn't see this whole situation, but, you know, I have to admit, I think [defendant's trial attorney] did an excellent job because . . . some of the things [the trial attorney] said are believable . . . in terms of what goes on, on the north side [of Flint].

> And . . . unfortunately I think sometimes when you have people who . . . don't live on the north side, [and] are not in that environment . . . they can be duped–

> [*Baker's Brother*]: Mmm-hmm.

> *The Court*: Into believing things that may not exist because they may have their own impressions and . . . opinions. And I think that's what happened in this case.

> [*Baker's Brother*]: Yeah.

> *The Court*: . . . [B]ut I just think the jurors also probably felt that . . . because it involved a drug deal and because he was involved in drug dealing, they gave [defendant] some benefit of the doubt that he didn't deserve, that's what happened here.

> So . . . you're right, this is not fair [because] your brother lost his life and . . . there is no doubt in my mind [that] he did not have that machete in his hand when he was shot in the head twice.

> . . . [T]his story about [defendant] putting it back upstairs after he shot the guy in the head twice is totally unbelievable. Nobody's gonna [sic] do that. You shoot somebody in the head, you're heading in the opposite direction.

> You're not gonna [sic] step back in the house and pick a knife up and . . . take it upstairs and set [it] up there against the wall and then leave. I mean, that's just ridiculous.

Later, after defendant had finished his allocution, the trial court delivered its sentencing decision, in relevant part, as follows:

> I see a cold heart in you. Okay. [Because] nobody would've executed that man in that way unless they were cold hearted. Okay. That's why I have the opinion I have.
>
> You shot him twice in the head and I do not believe for a minute he had a weapon on him at the time you shot him. And he definitely didn't have that machete, that's for sure [because] we know where it was found.
>
> Now, the jury gave you a break and I think, when I see that, I think sometimes jurors make mistakes. You should've been convicted of first[-]degree premeditated murder and you should be going away for the rest of your life today, but you're not.

Once a defendant is acquitted of a certain crime, it violates due process to sentence the defendant using an essential element of the acquitted offense as an aggravating factor. *Beck*, 504 Mich at ___; slip op at 19 (quotation marks and citation omitted). And in this case, Baker's status as being armed is central to the jury verdict of voluntary manslaughter. Provocation is the element that separates voluntary manslaughter from murder. *People v Pouncey*, 437 Mich 382, 388; 471 NW2d 346 (1991). More specifically, "the defendant must kill in the heat of passion," which is "caused by an adequate provocation" without a corresponding "lapse of time during which a reasonable person could control his passions." *Id.* Here, defendant's claim that Baker had a machete was the only purported "adequate provocation." The jury was free to discredit defendant's version of events, but the verdict indicates that it did not do so. In other words, if the jury believed that Baker was unarmed, there would be no basis for the jury to find the element of "adequate provocation." But the trial court obviously concluded that Baker was unarmed, and thus, defendant lacked the requisite provocation—negating the basis for the essential element relied upon by the jury and one it implicitly found beyond a reasonable doubt.

Considering the trial court's comments—that the jury was mistaken, that defendant's story was unbelievable, and that the jury had been duped—together with the trial court's statements that defendant should have been convicted of first-degree murder and should be going away for life, it appears that the trial court was punishing defendant as severely as it could under the voluntary manslaughter verdict because it believed defendant committed first-degree murder. Consequently, the trial court impermissibly based its sentencing decision on a finding that defendant committed the conduct for which he was acquitted, and defendant is entitled to resentencing on his voluntary manslaughter conviction. See *Beck*, 504 Mich ___; slip op at 21-22. Because the judge who imposed defendant's sentence has retired, defendant's argument that he should be resentenced by a different judge is moot. And in light of our decision, we also consider as moot defendant's other arguments challenging his voluntary manslaughter sentence.

Defendant's sentence for voluntary manslaughter is vacated and this matter is remanded to the trial court for resentencing in conformity with *Beck*. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood