*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

ANTOINE HARVEY,

      Defendant-Appellant.

UNPUBLISHED
June 15, 2023

No. 364348
Macomb Circuit Court
LC No. 2022-001552-FC

Before: REDFORD, P.J., and O'BRIEN and FEENEY, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] the order denying his motion to quash his bindover on the charge of first-degree murder, MCL 750.316(1)(a). We affirm.

## I. BACKGROUND

This case arises from the death on February 13, 2022, of Antonio Neal, defendant's neighbor who lived in the same building in an apartment complex. Neal told his longtime fiancé, Tamika Robertson, and their daughter, CN, he was going to the local car wash to wash his truck. Video evidence shows that at about 12:30 p.m., Neal arrived at the car wash and approached defendant vacuuming his car. The two began arguing, and at one point, Neal reached into defendant's car, grabbed an unidentifiable object, and placed it in his pocket. Neal then grabbed a black pole from his truck, brandished it at defendant, before the two men returned to their vehicles. At about 12:34 p.m., Neal and defendant left the car wash.

Between 12:34 p.m. and 12:36 p.m., defendant and Neal each arrived back at their apartment complex. Video indicated that at 12:36 p.m., an individual, appearing to be defendant, exited the apartment with a large object in his hands. About the same time, Robertson called 911, stating that defendant "pulled a gun out on my fiancé." At 12:37 p.m., Robertson exclaimed: "He

---

[1] *People v Harvey*, unpublished order of the Court of Appeals, entered February 15, 2023 (Docket No. 364348).

just shot my husband!" Defendant ran back into the apartment building at 12:38 p.m., and at 12:40 p.m. ran out the back door. Officers who arrived at the scene found Neal in the parking lot. Neal was transported to McLaren Macomb hospital where he was pronounced dead. The next day, defendant surrendered to police and a felony complaint charged defendant with one count of first-degree murder, MCL 750.316(1)(a), and one count of possession of a firearm in the commission of a felony (felony-firearm), MCL 750.227b.

During the preliminary examination, the lower court admitted nine exhibits including a surveillance video from the local car wash, audio recording of Robertson's 911 call, video footage from a doorbell camera across from Neal's apartment, the dashcam video recording from the responding officer's patrol car, and the officer's body camera footage. Robertson and CN testified about their recollection of the shooting. Robertson and CN testified that Neal called Robertson on his way home from the car wash and told her that defendant "was coming back to the house." Neal arrived at the apartment complex shortly after the phone call, parked, and exited his truck. Defendant arrived about two minutes after Neal. Defendant ran to the balcony of his apartment, and told his girlfriend, Keishia Thomas, to "hand me my piece," and Thomas threw a gun to defendant. Defendant, holding a gun in one hand and a child's toy in the other, ran from the front of the apartment building toward Neal, who held a black metal pole. Defendant swung the toy at Neal, and fired a single shot. Defendant dropped the toy, chased Neal through the parking lot, and fired two more shots. Defendant eventually tackled Neal, and the two began fighting on the ground. While on the ground, defendant fired a fourth shot, got up, ran into the apartment building, and then out the back door.

During the preliminary examination, questions arose regarding the credibility of Robertson's and CN's testimonies. On cross-examination, Robertson admitted that she had not told police Neal grabbed the black pole from his truck during the altercation, and her story regarding defendant's actions before the shooting also changed. Robertson admitted that she failed to mention that defendant approached the apartment and asked Thomas to hand him his "piece" and that she did not tell the 911 operator that Thomas threw a gun to defendant. Robertson claimed she was on the phone with 911 before defendant and Neal arrived back at the apartment complex, even though the 911 audio indicated Robertson called at 12:36 p.m. Video evidence showed defendant back at the apartment complex at that time. Despite stating she saw defendant throughout the entire altercation, Robertson admitted that she had no idea how defendant obtained the toy he allegedly used to strike Neal.

During CN's testimony, despite video evidence showing defendant at the car wash before Neal, she stated that Neal called Robertson and said defendant followed him to the car wash. CN also stated that defendant told Thomas to throw him his gun and that he caught it with two hands, put the gun in one hand, and then held the child's toy in the other, but later admitted that defendant could not have had the toy at that time because it would not have been feasible for defendant to have caught the gun with both hands while holding the toy. CN also made several conflicting statements regarding defendant's possession of the child's toy.

During the second day of the preliminary examination, Clinton Township Police Department Detective Michael Chirco's testimony highlighted the discrepancies in Robertson's and CN's testimonies. Detective Chirco affirmed that video evidence showed defendant entering and leaving his apartment before the shooting, and that no video footage showed Thomas dropping

a gun to defendant from a balcony. Detective Chirco testified that during his initial interview with Robertson, she indicated that she personally did not witness Thomas drop a gun to defendant, and that only CN had. Detective Chirco also testified that, based on the timestamps of the video evidence, it was not possible for Robertson to be on the phone with the 911 operator before Neal and defendant arrived at the apartment complex.

During closing arguments, the parties addressed the issue of premeditation and deliberation, to determine whether defendant should be bound over for first-degree murder. The prosecution averred that defendant had sufficient time to premeditate and deliberate before shooting Neal and therefore, should be bound over on the first-degree murder charge. Defense counsel submitted that defendant did not premeditate and deliberate because defendant did not have an adequate cooling down period and was acting in hot blood. And, because the eyewitness's testimonies were incredible, they could not be relied upon to establish premeditation and deliberation.

The district court found that the prosecution met its burden of proof, acknowledging inconsistencies in the testimonies and the inherent unreliability of eyewitness testimony. It explained:

> What's clear is that Mr. Harvey got a gun and shot Mr. Neal. The question is, is premeditation and deliberation. And I think there's an argument to be made . . . . That that determination to go get that gun and shoot him was the heat at the carwash. And the question is, is there time to cool down. Look, it's whatever it is, over two minute drive back. He does go back up to the room, he does at that point have access to a phone if he needed it. I believe they've at least laid out a factual basis for a jury to determine whether or not it was premeditated and deliberated. So I think they've met their burden. I'm going to bind Mr. Harvey over as charged on both counts one and two.

Defendant moved in the circuit court to quash the first-degree murder charge, claiming that the district court improperly found sufficient evidence existed to bind over defendant. Defendant argued that Robertson's and CN's testimonies were incredible, as their accounts of the altercation drastically differed from and were discredited by the video evidence and could not establish that defendant acted with premeditation or deliberation. Defendant contended that the video evidence showed that the altercation occurred over a relatively short period, such that the circumstances surrounding the altercation would lead any reasonable person to conclude that defendant acted in hot blood, and no credible evidence existed to suggest that he acted with malice aforethought undisturbed by hot blood. Defendant, therefore, argued that he could not be charged with first-degree murder.

The prosecution argued that the evidence supported the decision to bind over defendant on the first-degree murder charge because extensive evidence established: (1) defendant and Neal had an altercation at the local car wash; (2) after leaving the car wash, defendant returned home to his apartment and retrieved a firearm; (3) defendant exited his apartment and approached Neal while holding the firearm; and (4) defendant aimed and fired multiple shots at Neal. Defendant had adequate time to cool off and premeditate and deliberate between the initial altercation and when he fired shots at Neal. The prosecution argued that defendant's motion to quash should be denied.

The circuit court entered an opinion and order denying defendant's motion to quash. The court concluded that the uncontroverted evidence supported the district court's bindover decision, because it demonstrated that defendant had adequate time to "formulate a plan to retrieve his firearm and resume the confrontation with homicidal intent, and that he had the opportunity to give that plan a second look before ultimately shooting Neal." The circuit court concluded that defendant's bindover fell within the range of reasonable and principled outcomes because one could reasonably infer from the evidence that defendant acted with premeditation and deliberation. This appeal followed.

## II. BINDOVER

Defendant argues the circuit court abused its discretion by denying his motion to quash and upholding his bindover on first-degree murder because insufficient evidence existed to prove defendant acted with premeditation and deliberation.

## A. STANDARDS OF REVIEW

This Court reviews "de novo the bindover decision to determine whether the district court abused its discretion, giving no deference to the circuit court's decision." *People v Hawkins*, 340 Mich App 155, 173; 985 NW2d 853 (2022) (citation omitted). In reviewing a district court's bindover decision, "a circuit court must consider the entire record of the preliminary examination and may not substitute its judgment for that of the district court." *People v Henderson*, 282 Mich App 307, 312-313; 765 NW2d 619 (2009). "A trial court abuses its discretion when it chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Galloway*, 335 Mich App 629, 637; 967 NW2d 908 (2020) (quotation marks and citation omitted).

## B. ANALYSIS

"The purpose of a preliminary examination is to determine whether probable cause exists to believe that a crime was committed and that the defendant committed it." *People v Bennett*, 290 Mich App 465, 480; 802 NW2d 627 (2010) (quotation marks and citation omitted). "Probable cause is established if a person of ordinary caution and prudence [could] conscientiously entertain a reasonable belief of the defendant's guilt." *Id*. (quotation marks and citation omitted, alteration in original). At the preliminary-examination stage, the prosecutor is not required to "prove each element beyond a reasonable doubt, but must present some evidence of each element." *Henderson*, 282 Mich App at 312. "Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime." *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016). "If the evidence conflicts or raises a reasonable doubt, the defendant should be bound over for trial, where the questions can be resolved by the trier of fact." *Henderson*, 282 Mich App at 312. "[I]n considering the credibility of witnesses, a magistrate may only decline to bind over a defendant if a witness's lack of credibility, when considered together with the other evidence presented during the examination, would preclude a person of ordinary prudence and caution from conscientiously entertaining a reasonable belief of the accused's guilt." *People v Anderson*, 501 Mich 175, 188; 912 NW2d 503 (2018) (quotation marks and citation omitted).

"The elements of first-degree murder are: (1) the intentional killing of a human (2) with premeditation and deliberation." *Bennett*, 290 Mich App at 472 (citations omitted). "The elements of second-degree murder are (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *People v Wafer*, 509 Mich 31, 40; 983 NW2d 315 (2022).

> First-degree premeditated murder is only distinguished from second-degree murder by the element of premeditation. Premeditation is not statutorily defined and cannot be evaluated in a rigid and mechanical manner. Premeditation cannot be found where a defendant acts on a sudden impulse. The brutality and violence of a killing does not, by itself, show premeditation. However, premeditation may be established by circumstantial evidence tending to show that a defendant had an opportunity to think about, evaluate, or take a "second look" at their actions. The opportunity must be adequate, but it need not be long. Premeditation may be established through evidence of the following factors: (1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide. [*People v Walker*, 330 Mich App 378, 383-384; 948 NW2d 122 (2019) (quotation marks and citations omitted).]

"Premeditation and deliberation may be inferred from all the facts and circumstances, but the inferences must have support in the record and cannot be arrived at by mere speculation." *People v Plummer*, 229 Mich App 293, 301; 581 NW2d 753 (1998) (citation omitted). "When the evidence establishes a fight and then a killing, there must be a showing of a thought process undisturbed by hot blood in order to establish first-degree, premeditated murder. The critical inquiry is not only whether the defendant had the time to premeditate, but also whether he had the capacity to do so." *Id*. at 301 (quotation marks and citation omitted).

Defendant contends that he cannot be bound over on first-degree murder because no credible, reliable evidence adequately established that defendant premeditated and deliberated before killing Neal. The record reflects that Robertson's and CN's testimonies were, at times, inconsistent with the audio and video evidence presented at the preliminary examination. The district court acknowledged these discrepancies.

The uncontroverted evidence, however, established that defendant and Neal engaged in an argument at a local car wash, defendant left the car wash and arrived at the apartment complex about two minutes later and went to his apartment, he retrieved a gun, went out to the parking lot and confronted Neal, shot at Neal three times, tackled and engaged in a physical struggle with Neal on the ground, and shot Neal again. Defendant then entered the apartment building and shortly thereafter exited it through the rear and fled the scene. The police never recovered the gun. The record also indicates that Robertson told the 911 operator that defendant shot Neal. Despite the conflicting testimony regarding what exactly occurred in the apartment complex parking lot, a person of ordinary caution and prudence could conclude from the evidence presented by the prosecution that defendant intentionally killed Neal with premeditation and deliberation. The sequence and timing of events established by the uncontroverted evidence permits a reasonable inference that defendant had an adequate opportunity to cool off and take a "second look" between the time he left the car wash at 12:34 p.m. and when shots were fired at 12:37 p.m. See *People v Pouncey*, 437 Mich 382, 385, 392; 471 NW2d 346 (1991) (sufficient "cooling-off" period existed

where the defendant went into his house following a verbal exchange and returned 30 seconds later with a shotgun). Defendant's decision to get a deadly weapon before the killing is a further indication of premeditation and deliberation. See *People v Waters*, 118 Mich App 176, 186-187; 324 NW2d 564 (1982).[2] Further, that defendant immediately fled the scene and police were unable to recover the gun supports an inference of premeditation. See *Walker*, 330 Mich App at 383-384.

To the extent that the video and audio evidence conflict with Robertson's and CN's testimonies, the issue whether defendant premeditated and deliberated are questions that must be resolved by the trier of fact. *Henderson*, 282 Mich App at 312. We "must remain mindful that the judge who hears the testimony has the distinct advantage over the appellate judge, who must form judgment solely from the printed words." *Anderson*, 501 Mich at 189 (quotation marks and citation omitted). In this case, the district court properly acknowledged the discrepancies in the witnesses' testimonies but did not find that any of the witnesses lacked credibility. Moreover, the nontestimonial evidence supports the district court's finding that defendant had sufficient time to cool down. Accordingly, the district court did not abuse its discretion by binding over defendant for trial on the first-degree murder charge. The circuit court, therefore, did not err by denying defendant's motion to quash.

Affirmed.

/s/ James Robert Redford
/s/ Colleen A. O'Brien
/s/ Kathleen A. Feeney

---

[2] While *Waters* is not binding because it was decided before 1990, it may be considered for its persuasive value. See MCR 7.215(J)(1).