*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAFFAR MOUSTAK TAWFIK,

        Defendant-Appellant.

UNPUBLISHED
December 19, 2019

No. 345690
Wayne Circuit Court
LC No. 18-001671-01-FC

Before: RIORDAN, P.J., and JANSEN and STEPHENS, JJ.

PER CURIAM.

Following a bench trial, defendant was convicted of assault with intent to murder (AWIM), MCL 750.83, carrying a weapon with unlawful intent, MCL 750.226, carrying a concealed weapon (CCW), MCL 750.227, and felony firearm, MCL 750.227b. The trial court sentenced defendant to a mandatory two years of imprisonment for the felony-firearm conviction, 10 ½ to 20 years of imprisonment for the AWIM conviction, 2 to 5 years of imprisonment for the conviction of carrying a weapon with unlawful intent, and 2 to 5 years of imprisonment for the CCW conviction. Defendant appeals as of right his AWIM conviction, arguing that there was insufficient evidence to sustain his conviction[1] and, in the alternative, for resentencing because offense variable (OV) 3 (physical injury to victim) was scored incorrectly by the trial court at 25 points. We affirm defendant's AWIM conviction and sentence.

## I. FACTS

The victim worked delivering flyers in defendant's neighborhood. One day, as the victim approached defendant's house, defendant's father came outside, yelled at the victim, and threw the flyer back at him. The victim had been paired with another employee who distributed flyers on the opposite side of the street, and who witnessed the altercation. The victim and his co-

---

[1] Defendant contends that the evidence supports, at most, a conviction of assault with intent to do great bodily harm (AWIGBH).

worker continued walking down the street, and the victim called his boss. At his employer's request, the victim returned to defendant's house to take a picture of the house with his phone so that his employer would know which house to remove from the distribution list. Before he could take a picture, defendant's father came out of the house and attacked him with a milk crate. The two were fighting when defendant ran outside and pulled his father off of the victim. Defendant told the victim to leave, and he did. The victim and his co-worker were a block away from the house when they heard gunshots and saw defendant's father approaching. Then defendant drove up in a white van, and then shot at the victim several times, but missed. The victim and his co-worker ran away, and the van drove off.

The victim called his boss and 911 after defendant left in the van. The victim was on the phone with 911 when he saw defendant's father approaching him again. Defendant's father was barefoot and had a large knife in his hand. Defendant again pulled up in a white vehicle and the victim's co-worker ran for cover in a nearby abandoned garage. Defendant shot at the victim several more times. This time, a bullet struck the victim in his left side. The victim fell to the ground and his phone fell out of his hand. However, 911 was still on the line.[2] Defendant drove off, and his father ran up to the victim and tried to pick him up to put him in a vehicle. The victim was afraid and refused this assistance. Eventually defendant's father left, and the victim's co-worker came to his aid and stayed with him until help arrived.

When a Detroit Police officer arrived on the scene, she found the victim laying on the ground, in pain, distressed, and having a difficult time talking and breathing. The victim was taken to the hospital where a bullet was removed from his chest.

Surveillance video from defendant's house captured part of the action. It depicts the initial altercation between the victim and defendant's father, and the second altercation when defendant separated the victim and his father and the victim ran away. It also shows defendant and his father getting into a white van, driving away, and then returning. Defendant got out of the van and fired a handgun into the air. Defendant's father got back into the van and drove away, while defendant got into a white car and drove away.

Defendant was convicted of AWIM, carrying a weapon with unlawful intent, CCW, and felony firearm. He now appeals.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant first challenges the sufficiency of the evidence and argues that there was no evidence presented to show that he intended to kill the victim. Rather, he contends that he only intended to scare the victim which more properly supports conviction of assault with intent to do great bodily harm (AWIGBH). We disagree.

This Court reviews challenges to the sufficiency of the evidence in bench trials de novo. *People v Lanzo Const Co*, 272 Mich App 470, 473–474; 726 NW2d 746 (2006). When

---

[2] The tape from the 911 call was admitted into evidence at trial.

ascertaining whether sufficient evidence was presented to support a conviction, this Court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Kanaan,* 278 Mich App 594, 618; 751 NW2d 57 (2008). The weight of the evidence and the credibility of witnesses are to be determined by the trier of fact. *Id.* at 619.

The elements of AWIM are "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014) (internal quotation marks and citation omitted).

Defendant first challenges the element of intent, arguing that no reasonable inference could be made that he formed a specific intent to kill, versus a specific intent to do great bodily harm less than murder, because there is no evidence that he aimed at the victim, was a good shot, or had time to reflect and form a specific intent to kill. When making its finding that defendant possessed the specific intent to kill, the trial court relied on the fact that multiple shootings occurred, that defendant left the scene and came back to fire another round of shots at the victim, and that the bullet hit near center mass. Defendant contends that this evidence could indicate intent to do great bodily harm less than murder or even just a lucky shot.

Intent may be inferred from circumstantial evidence. *People v McGhee,* 268 Mich App 600, 623; 709 NW2d 595 (2005). Intent to kill may be inferred from all the facts in evidence, including the use of a deadly weapon, *People v Carines*, 460 Mich 750, 759; 597 NW2d 130 (1999), flight, and lying, which may reflect a consciousness of guilt, *People v Unger*, 278 Mich App 210, 223, 225–227; 749 NW2d 272 (2008). Moreover, "because it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind . . . ." *Kanaan*, 278 Mich App at 622.

Here, defendant pulled out a gun, a deadly weapon, pointed it at the victim, and shot at or near the victim several times on three different occasions, and then fled the scene immediately after he injured the victim. Contrary to defendant's argument, there was evidence that he aimed at the victim. Although the victim and his co-worker both testified that they did not actually see defendant fire the gun because they were seeking cover, a bullet was removed from the victim's chest. A reasonable inference is that defendant aimed at the victim and shot him near center mass with the intent to kill him.

Defendant next challenges the element of intent by asserting that he lacked the required amount of time to "cool down." Defendant contends that he did not have time for cool headed reflection because the record shows only a matter of three minutes passed from when he fired the first set of shots in to the air, returned home, fired more shots, and then left in the white van to find the victim. Although the trial court held three minutes was enough time to reflect and cool down, the video clearly shows he did not actually cool down in those three minutes because he was still firing off shots during that time. Under defendant's theory, if the shooting had resulted in the victim's death, it would have amounted to voluntary manslaughter, not murder. Thus, defendant's argument can better be understood as a challenge to the third element of AWIM.

"Murder and manslaughter are both homicides and share the element of being intentional killings." *People v Pouncey*, 437 Mich 382, 388; 471 NW2d 346 (1991). "However, the element of provocation which characterizes the offense of manslaughter separates it from murder." *Id.* "[T]o show voluntary manslaughter, one must show that the defendant killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions." *People v Mendoza*, 468 Mich 527, 535; 664 NW2d 685 (2003), citing *Pouncy*, 437 Mich at 389.

Defendant presents no argument that he was adequately provoked. *Pouncey*, 437 Mich at 389 (the provocation must be adequate, namely, that which would cause the reasonable person to lose control). "Not every hot-tempered individual who flies into a rage at the slightest insult can claim manslaughter." *Id.* Even assuming defendant could show legally adequate provocation, defendant cannot show that he lacked a sufficient "cooling off" period merely because he did not actually cool off. The standard is an objective one, and no precise time has been established during which passion must subside. See *id.* at 388 (approximately thirty seconds was sufficient to constitute a "cooling off" period). Accordingly, we find that there was sufficient evidence presented to sustain defendant's AWIM conviction.

## III. SCORING OF OFFENSE VARIABLE 3

Defendant next argues that the trial court scored OV 3 incorrectly at 25 points because there was no evidence that the victim suffered a life threatening or permanent incapacitating injury. We disagree.

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v McDade*, 301 Mich App 343, 356; 836 NW2d 266 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

OV 3 addresses physical injury to the victim. MCL 777.33(1); *People v Laidler*, 491 Mich 339, 343; 817 NW2d 517 (2012). MCL 777.33(1)(c) directs trial courts to assess 25 points under OV 3 if, during the offense, a "life threatening or permanent incapacitating injury occurred to a victim." However, 10 points are assessed when bodily injury requiring medical treatment occurred to the victim. MCL 777.33(1)(d). The relevant inquiry is whether the victim's injury was life threatening, rather than whether a defendant's action was life threatening. *People v Rosa*, 322 Mich App 726, 746; 913 NW2d 392 (2018). This Court has recognized the ordinary meaning of "life-threatening" as "capable of causing death: potentially fatal." *People v Chaney*, 327 Mich App 586; ―― NW2d ―― (2019). Therefore, the relevant inquiry is whether the injuries were potentially fatal. *Id.* In assessing whether an injury is "life threatening," this Court's review must also take into account "the effect of medical treatment." *Id.* at 586 n 4. However, medical testimony is not necessary to prove that a victim suffered life-threatening injuries. *People v McCuller*, 479 Mich 672, 697 n 19; 739 NW2d 563 (2007).

Defendant shot the victim in the back, and a bullet was removed from the victim's chest. The trial transcript is unclear about whether the bullet actually penetrated the victim's lung, but there is, nonetheless, substantial evidence to show the bullet wound impacted his breathing and the functioning of his lungs. At the time of the trial, he still had difficulty speaking and breathing. The victim required hospitalization for approximately two weeks, and still had complications from his wounds at the time of sentencing. He testified that he experienced trouble breathing and required the use of an inhaler every five hours. He also had sharp pains in his left side which caused difficulty sleeping.

When scoring OV 3, the trial court stated that it was relying in part on the victim's medical records—a file of papers six inches thick. Notably, that file was not made available to this Court. An appellant bears the burden of furnishing a reviewing court with "a record to verify the factual basis of any argument upon which reversal" is predicated. *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000); see also *Petraszewsky v Keeth (On Remand)*, 201 Mich App 535, 540; 506 NW2d 890 (1993). Here, defendant fails to do anything remotely close. Therefore, we cannot find that defendant has shown the trial court erred by finding that the victim's injuries were life threatening.

## IV. CONCLUSION

Sufficient evidence was presented to sustain defendant's AWIM conviction and OV 3 was properly scored. Affirmed.

/s/ Michael J. Riordan
/s/ Kathleen Jansen
/s/ Cynthia Diane Stephens