*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 9, 2020

Plaintiff-Appellee,

v

No. 344986
Kalkaska Circuit Court

BRIAN KEITH DEGROOT,

LC No. 17-004027-FC

Defendant-Appellant.

Before: CAVANAGH, P.J., and BECKERING and GLEICHER, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of first-degree murder, MCL 750.316(1), and torture, MCL 750.85. Defendant was sentenced as a second-offense habitual offender, MCL 769.10, to serve a life term for murder and 356 months to 60 years for torture. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

Defendant was charged with murdering and torturing his father-in-law, the victim in this case. Law enforcement found a crossbow bolt in a burn barrel on defendant's mother's property. Salt was discovered on the victim's body, and when it was analyzed, two compounds common in table salt were found with it. The forensic examiner found seven stab wounds in the victim. One wound, the most life-threatening, almost severed the victim's heart. The other stab wounds were not as life-threatening, except for a stab wound in the neck that was capable of causing significant bleeding. Of the weapons shown to him at trial, the forensic examiner testified that the crossbow arrow shaft was the best candidate for having caused the wound to the heart.

Defendant twice confessed to killing the victim. Defendant's first confession occurred while in a police car outside of his mother's house. Defendant's second confession occurred while he was in jail, after being arraigned. Defense counsel attempted to suppress the second confession, but the trial court found that defendant's waiver of his *Miranda* rights was made in a knowing, intelligent, and voluntary manner. Defendant admitted that he attacked the victim. Defendant confessed to slashing defendant on the back and then stabbing him. Defendant stated that the victim ran into the shower. While the victim was in the shower, defendant told him to rinse off because defendant did not want blood everywhere. Defendant told the victim that when the victim

-1-

came out, defendant was going to kill him. Defendant confessed to shooting the victim with a crossbow after he had slashed his throat. Defendant stated that he did not remember pouring salt into the victim's wounds.

## II. ANALYSIS

### A. SUFFICIENCY OF THE EVIDENCE FOR TORTURE

Defendant first argues that there was insufficient evidence to convict him of torture, MCL 750.85. We disagree.

### 1. STANDARD OF REVIEW

This Court reviews sufficiency-of-the-evidence claims de novo. *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010). This Court must determine "whether the evidence, viewed in a light most favorable to the people, would warrant a reasonable juror in finding guilt beyond a reasonable doubt." *People v Nowack*, 462 Mich 392, 399; 614 NW2d 78 (2000). Reviewing courts must draw all reasonable inferences and credibility determinations in favor of the jury's verdict. *Id*. at 400.

### 2. ANALYSIS AND APPLICATION

MCL 750.85 states that "[a] person who, with the intent to cause cruel or extreme physical or mental pain and suffering, inflicts great bodily injury or severe mental pain or suffering upon another person within his or her custody or physical control commits torture and is guilty of a felony punishable by imprisonment for life or any term of years." MCL 750.85(2)(c)(*ii*) defines great bodily injury to include "severe cuts, or multiple puncture wounds." MCL 750.85(2)(a) defines cruel as "brutal, inhuman, sadistic, or that which torments."

Defendant's first argument is that there was not sufficient evidence of custody or physical control over the victim because the victim was able to take a shower and attempted to escape. MCL 750.85(2)(b) defines "custody or physical control" as "the forcible restriction of a person's movements or forcible confinement of the person so as to interfere with that person's liberty, without that person's consent or without lawful authority." Defendant stabbed the victim in the chest in the victim's garage. After the victim retreated to the shower, defendant locked the door to prevent the victim from escaping, and defendant's wife assisted in preventing the victim from escaping. These are examples of "forcibly restricting" the victim's movement, which satisfy MCL 750.85(2)(b).

Defendant's second argument is that he did not torture the victim because the stabbings were part of the homicide. MCL 750.85(1) applies when a defendant inflicts great bodily injury or severe mental pain or suffering upon another person. MCL 750.85(c)(*ii*) defines "great bodily injury" as "[o]ne or more of the following conditions: internal injury, poisoning, serious burns or scalding, severe cuts, or multiple puncture wounds." MCL 750.85(4) states, "A conviction or sentence under this section does not preclude a conviction or sentence for a violation of any other law of this state arising from the same transaction." Defendant admitted to both cutting and stabbing the victim. The forensic examiner found seven stab wounds on the victim. Defendant

claimed that he did not stab the victim seven times. However, defendant admitted to slashing and cutting the victim. Defendant inflicted great bodily harm on the victim in this case because he severely cut and stabbed the victim, who had multiple puncture wounds. To the extent that defendant argues that the cuts and stabs were part of a homicide and should not be considered for a torture conviction, MCL 750.85(4) applies and allows defendant to be convicted of both torture and homicide. On appeal, this Court considers all reasonable inferences and credibility determinations in favor of the jury verdict. *Nowack*, 462 Mich at 400. As a result, the jury's determination that defendant stabbed and cut the victim enough to support torture should not be disturbed; it is a reasonable inference drawn from the physical evidence and confessions.[1]

## B. VOLUNTARY MANSLAUGHTER JURY INSTRUCTION

Defendant next argues that the jury should have been instructed on manslaughter. We disagree. A rational view of the evidence does not support a conviction of manslaughter where the murder was not committed with adequate provocation in the heat of passion.

## 1. STANDARD OF REVIEW

This Court generally reviews de novo claims of jury instruction error, but the trial court's determination regarding whether a jury instruction is applicable to the facts of a case is reviewed for abuse of discretion. *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). Additionally, a defendant must show that the asserted instructional error resulted in a miscarriage of justice. *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010).

## 2. ANALYSIS AND APPLICATION

Manslaughter, both voluntary and involuntary, is necessarily a lesser included offense of murder. *People v Mendoza*, 468 Mich 527, 540; 664 NW2d 685 (2003). An instruction for an inferior offense is only appropriate when a rational view of the evidence supports a conviction of the lesser crime. *Id*. at 545. A trial court does not err by denying a jury instruction when a rational view of the evidence does not support a conviction of the lesser offense. *Id*. at 548. First-degree murder is governed by MCL 750.316. Second-degree murder, which includes all other murders, requires the following four elements: "(1) death, (2) caused by defendant's act, (3) with malice, and (4) without justification." *Id*. at 534. Manslaughter includes the same elements as second-degree murder except for malice. *Id*. Voluntary manslaughter occurs when a defendant "killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions." *Id*. at 535. Provocation negates

---

[1] Defendant also argues that there is insufficient evidence for his torture conviction because there is not sufficient evidence that he poured salt in the victim's wounds. For the reasons discussed already, the jury had sufficient evidence to convict defendant of torture regardless of the salt. Defendant, in his confession, stated that if he did pour salt in the victim's wounds, he did not remember it. However, salt was found on the victim's body, and when it was analyzed, two compounds commonly found in table salt were in it. Therefore, there was also sufficient evidence that defendant poured salt in the victim's wounds.

malice rather than forming an element of its own. *Id*. at 536. Involuntary manslaughter occurs when the killing is unintentional. *Id*.

Defendant's argument focuses on the trial court's denial of a voluntary manslaughter jury instruction. The trial court did not err because there was no adequate provocation alleged such that a rational view of the evidence would support manslaughter. Adequate provocation causes a defendant to "act out of passion rather than reason." *People v Mitchell*, 301 Mich App 282, 287; 835 NW2d 615 (2013) (quotation marks and citations omitted). In *Mitchell*, this Court held that there was evidence to support a voluntary manslaughter jury instruction because the victim had threatened to harm the defendant, the defendant maintained that the victim was the initial aggressor, and the defendant had wounds on him when he was arrested. *Id*. at 287-288. Words alone generally do not constitute adequate provocation, although the Michigan Supreme Court has declined to create a per se rule that words alone may never be adequate provocation. *People v Pouncey*, 437 Mich 382, 391; 471 NNW2d 346 (1991). The jury determines whether there is adequate provocation, but the trial court determines the standard of what is adequate provocation. *Id*. at 390. The provocation must blur the defendant's reasoning so that the killing was in the heat of passion. *Id*. Deliberate and reasoned acts can show that a person was not provoked such that voluntary manslaughter is appropriate. *Id*. at 390 n 9.

Defendant alleges that adequate provocation was demonstrated by either the victim's threat against defendant or his throwing of brass filings at defendant after the attack had begun that led to the victim's death. The alleged threat by the victim against defendant was not adequate provocation because it was only words and there was minimal evidence in the record of the threat. Defendant said in his interview that he heard a threat from the victim approximately a year before the murder. The investigating officer testified that there was some talk about the victim having threatened defendant with a knife. Although the alleged threat by the victim was graphic and descriptive,[2] the threat was still mere words. In addition, defendant stated in his interview that he reacted to that threat by thinking, "Okay, whatever." Defendant admitted that he and the victim were getting along before the murder. Defendant admitted that the victim did not come after defendant with a weapon that night. Therefore, defendant's act was not in the heat of passion because he did not have a strong emotional reaction to the threat, which occurred over a year before the incident. See *Pouncey*, 437 Mich at 390 (noting that the defendant's statement that he was not angry supported a finding that his ability to reason was not blurred by passion). In this case, defendant admitted that he planned the attack to happen in the garage. The trial court's denial of defendant's motion for an instruction on voluntary manslaughter was not erroneous because a rational view of the evidence could not support that a verbal threat from a year before could be adequate provocation.[3]

---

[2] Defendant claimed that the victim told others to tell defendant that he would skin the victim in the street and kill his family.

[3] Defendant's argument that a voluntary manslaughter instruction was appropriate because the victim threw metal filings at defendant after the assault began is meritless because the victim's use of force was in self-defense. Defendant was the initial aggressor in the encounter, and he had

In addition, defendant was not entitled to a jury instruction on voluntary manslaughter because a rational view of the evidence does not support a finding that the killing was in the heat of passion. Voluntary manslaughter requires that there not be a lapse of time that would allow a reasonable person to control his passions. *Id*. at 388. In *Pouncey*, the defendant walked into a house and then came outside about 30 seconds later with a shotgun. *Id*. at 385. The Michigan Supreme Court considered that to be a sufficient " 'cooling-off period' " because the defendant could have stayed in the house. *Id*. at 392. Defendant in this case stated that the threat was made about a year before the murder. The murder occurred in the victim's house. Defendant could have stayed away from the victim's house, and a year is sufficient time to cool off. In addition, there were seven wounds on the victim. Defendant admitted that he planned the attack to happen in the garage. The victim ran into the shower, and while the victim was in the shower, defendant told the victim he was going to kill the victim. All of these facts demonstrate that there was time for defendant to "have cooled off" and that the killing was not in the heat of passion. Therefore, the trial court did not err by denying defendant a voluntary manslaughter instruction.

## C. OV 13 SCORING

The prosecution concedes that the trial court erred by relying solely on the fact of criminal charges in scoring OV 13. Although it is clear that the trial court erred, no remand is necessary in this case because the scoring error does not alter the appropriate sentencing guidelines range even when the OV 13 points are removed.

### 1. STANDARD OF REVIEW

The trial court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). The application of the facts to the sentencing guidelines is reviewed de novo because it is a question of law. *Id*.

### 2. ANALYSIS AND APPLICATION

A trial court may consider dismissed charges as long as there is a preponderance of the evidence supporting a finding that the crime occurred. *People v Nix*, 301 Mich App 195, 205; 836 NW2d 224 (2013). The trial court in this case stated that OV 13 was appropriately scored because there were charges pending at the time defendant committed this crime. The trial court stated that it had the police report, but was not sure the underlying facts were "operative." As the prosecution concedes, the trial court erred in this case because instead of determining whether the home invasion occurred by a preponderance of the evidence, it instead determined that OV 13 was satisfied merely because there were charges.

---

stabbed the victim multiple times. Although an initial aggressor may sometimes claim that the act was one of voluntary manslaughter, *People v Reese*, 491 Mich 127, 150-153; 815 NW2d 85 (2012), in this case defendant was in the victim's home, and attacked the victim repeatedly. In addition, defendant admitted that throwing the metal filings was the only time the victim fought back.

However, the trial court's OV 13 error does not entitle defendant to a remand because subtracting the 25 points assessed would not result in a change in his sentencing guidelines range. "Where a scoring error does not alter the appropriate guidelines range, resentencing is not required." *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006); see also MCL 777.62. Therefore, because defendant's minimum guidelines range would have been the same even without the OV 13 score, defendant is not entitled to a remand despite the error.

## D. DEFENDANT'S SECOND CONFESSION

Defendant argues that his waivers of his Fifth Amendment and Sixth Amendment rights to have counsel present when he made his statements to police were invalid. We disagree.

### 1. STANDARD OF REVIEW

A trial court's factual findings regarding the waiver of *Miranda*[4] rights are reviewed for clear error. *People v Daoud*, 462 Mich 621, 629; 614 NW2d 152 (2000). The meaning of the phrase "knowing and intelligent" is a question of law that is reviewed de novo. *Id*. at 629-630.

### 2. ANALYSIS AND APPLICATION

The Fifth Amendment provides the right to have an attorney present during custodial interrogation. *People v Smielewski*, 214 Mich App 55, 60; 542 NW2d 293 (1995). The Sixth Amendment prohibits waiver of the right to counsel, after the right has been invoked, in a police-initiated custodial interrogation. *Id*. at 61. The Sixth Amendment rights only attach once adversarial judicial proceedings have begun.[5] *Id*. at 60. *Miranda* rights may be waived by a voluntary waiver that is made knowing and intelligently. *Daoud*, 462 Mich at 639. Generally, the provision of *Miranda* warnings, and a waiver of these warnings, is sufficient for warning and waiving both the Fifth and Sixth Amendment protections. *Montejo v Louisiana*, 556 US 778, 786-787; 129 S Ct 2079; 173 L Ed 2d 955 (2009).

The Michigan Supreme Court in *Daoud* determined that " '[t]he mental state that is necessary to validly waive *Miranda* rights involves being cognizant at all times of the State's intention to use one's statements to secure a conviction and of the fact that one can stand mute and request a lawyer.' " *Daoud*, 462 Mich at 640-641, quoting *In re WC*, 167 Ill 2d 307, 328; 657 NE2d 908 (1995). "[A] knowing and intelligent waiver of the *Miranda* rights does not require that a suspect 'understand the ramifications and consequences of choosing to waive or exercise the rights that the police have properly explained to him.' " *Daoud*, 462 Mich at 642, quoting *People v Cheatham*, 453 Mich 1, 28; 551 NW2d 355 (1996). Instead, "a very basic understanding is all that is necessary for a valid waiver." *Daoud*, 462 Mich at 642. In *Daoud*, the Court held that a defendant needed to understand that he did not have to speak, that he had the right to have an attorney present, and that the information could be used against him. *Id*. at 643-644. In *Daoud*, an expert witness's "basic position was that defendant simply ignored the consequences of

---

[4] *Miranda v Arizona*, 384 US 436, 469-473; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[5] Defendant was arraigned before the second confession took place.

confessing because of his delusions, not that defendant could not understand those consequences. Indeed, Dr. Mogy acknowledged that defendant could understand the literal aspects of his *Miranda* rights." *Id*. at 644. The Michigan Supreme Court determined that the trial court's statements showed that it found that defendant understood his *Miranda* rights, and therefore the trial court erred by suppressing the statement. *Id*.

Defendant's argument that he did not make a knowing and intelligent statement is contradicted by the record. In *Daoud*, the defendant's statement that he understood each *Miranda* warning as it was given "clearly evidences defendant's awareness of the events that were transpiring." *Id*. at 641. In this case, defendant was the one who requested the interview. Defendant was read his *Miranda* rights, he was told he could have his attorney present, and he stated that he understood the rights he was waiving. The detectives told defendant that he had an attorney assigned to him and he had the right to have that attorney present. Defendant said he understood that and still wanted to talk. This is evidence that he understood the rights he was waiving. While defendant, on appeal, argues that his mental health issues rendered the confession involuntary, he cites no specific evidence to demonstrate that.

Moreover, defendant fails to show how his mental health issues rendered him unable to understand the "literal aspects of his *Miranda* rights." *Daoud*, 462 Mich at 644. A defendant only needs to understand that he does not have to speak, that he has the right to have an attorney present, and that his confession can be used against him. *Id*. at 643-644. A defendant's waiver of his rights is valid when he knows there will be consequences but believes for a delusional reason he will escape them. *Id*. at 644. Defendant stated during his confession that he wanted to help himself and "get as good as what I can possibly get." Defendant did not think that he should have to serve significantly more prison time than his wife when she helped murder her father. Defendant also stated that he knew that he was probably going to spend the rest of his life in prison. Defendant said he talked to the detectives of his own free will. Defendant's stated reasons for talking to the detectives—because he believed it could help him and so that they knew what his wife did—shows that he understood the information could be used against him. Additionally, his statement that he knew he was probably going to be in prison for the rest of his life demonstrated that he was aware that his statements could be used against him.

Defendant also argues that his confession was not voluntary. "[W]hether a waiver of *Miranda* rights is voluntary depends on the absence of police coercion." *Daoud*, 462 Mich at 635. A waiver of *Miranda* rights must come from a free and deliberate choice, and it must not come from intimidation, coercion, or deception. *Id*. The following factors should be considered to determine whether a confession is voluntary:

> [T]he age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and

whether the suspect was threatened with abuse. [*People v Cipriano*, 431 Mich 315, 334; 429 NW2d 781 (1988).]

The ultimate test is whether the totality of the circumstances demonstrates that the confession was freely made. *Id*.

Defendant's confession was voluntary because there was no police coercion. The voluntariness prong focuses on the absence of police coercion. *Daoud*, 462 Mich at 635. This is different from the knowing-and-intelligent prong, which focuses on what the defendant understood. See *Id*. at 636. Defendant does not provide any argument or evidence of police coercion. Defendant requested the interview while in jail. Defendant was read his *Miranda* rights, and defendant then decided to waive them. Defendant's argument that the police should have offered to actually contact defendant's attorney or specifically inform him that the interview could be rescheduled is irrelevant to the coercion argument because defendant was informed of his right to remain silent and his right to counsel.

Having reviewed defendant's confession, there is nothing to indicate that the interviewing officers used any potential mental or emotional health issue defendant may have had to manipulate or coerce him. Defendant admitted that he was talking to the detectives of his own free will. As discussed earlier in this opinion, defendant's decision to talk to the detectives was motivated by his concern that his wife was going to receive a significantly shorter sentence than he despite defendant's belief that she helped him murder the victim. Defendant presented no evidence that the detectives attempted to coerce him, and a review of defendant's second confession demonstrates that defendant had a reason for talking to the detectives. Therefore, defendant's argument that his confession was coerced is without merit.

## E. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant argues that trial counsel provided constitutionally ineffective assistance. We disagree.

### 1. STANDARD OF REVIEW

We review the trial court's findings of fact for clear error, and we review the ultimate constitutional issue in a claim of ineffective assistance of counsel de novo. *People v Swain*, 288 Mich App 609, 643; 794 NW2d 92 (2010). When a *Ginther*[6] hearing has not occurred, as here, our review is limited to mistakes apparent on the record. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

### 2. ANALYSIS AND APPLICATION

Both the Michigan Constitution of 1963 and the United States Constitution "require that a criminal defendant enjoy the assistance of counsel for his or her defense." *People v Trakhtenberg*,

---

[6] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

493 Mich 38, 51; 826 NW2d 136 (2012).  For a new trial to be warranted, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different."  *Id*.

There is a strong presumption that counsel's performance "was born from a sound trial strategy."  *Id*. at 52.  A court must consider whether the strategic choices were made after an incomplete investigation and whether a choice was reasonable to the extent that reasonable professional judgments support the limitations on the investigation.  *Id*.  Defense counsel is not required to make frivolous or meritless motions.  *People v Knapp*, 244 Mich App 361, 386; 624 NW2d 227 (2001).

Defendant cannot show that his counsel was ineffective for refusing to challenge the voluntariness and knowingness of defendant's confession because the confession was admissible, and because defense counsel did in fact attempt to suppress the confession.  Defense counsel did challenge the admissibility of defendant's second confession.  The trial court, in its opinion and order, discussed whether defendant's waiver was made knowingly, intelligently, and voluntarily.  Defendant's argument that trial counsel was ineffective for failing to raise a Sixth Amendment challenge to the confession is contrary to the record.  In addition, defense counsel is not required to make frivolous or meritless motions.  *Id*.  To the extent that defendant is arguing that defense counsel failed to provide effective assistance by not challenging his confession on Fifth Amendment grounds, or by not specifically arguing that defendant's alleged mental illness prevented him from making a knowing, intelligent, or voluntary confession, defendant's argument is meritless because none of those arguments would have prevailed, as discussed earlier in this opinion.  Therefore, trial counsel was not ineffective.

A defendant must also show that a different result would be reasonably probable but for defense counsel's error.  *Trakhtenberg*, 493 Mich at 56.  The burden may be met even if the errors cannot be shown by a preponderance of the evidence to have determined the outcome.  *Id*.  In cases where there is relatively little evidence to support a finding of guilt, the magnitude of errors to find prejudice is less than where there is greater evidence supporting a finding of the defendant's guilt.  *Id*.

There was no prejudice to defendant in this case.  Prejudice occurs when it is reasonably probable that defendant would not have been convicted but for defense counsel's error.  *Id*.  In this case, defendant made an earlier confession to the police.  In that confession, defendant admitted to killing the victim.  The evidence from the first confession combined with the forensic evidence would have been sufficient to convict defendant because defendant admitted to killing the victim

and the physical evidence showed that the victim had been murdered.  Therefore, even if defense counsel had erred, defendant would not be entitled to relief because he did not suffer prejudice.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Jane M. Beckering
/s/ Elizabeth L. Gleicher