*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
February 19, 2025
3:14 PM

Plaintiff-Appellee,

v

No. 368293
Kent Circuit Court
LC No. 2022-06901-FC

JEFFREY KEVIN CRAIG,

Defendant-Appellant.

Before: YATES, P.J., and LETICA and N. P. HOOD, JJ.

PER CURIAM.

On May 24, 2022, defendant, Jeffrey Kevin Craig, shot and killed Naquie Mitz at Pekich Park in Grand Rapids. Defendant testified at his trial that he did so. He further acknowledged that he was carrying a concealed weapon that evening and that he was forbidden to possess a firearm. A jury convicted defendant of second-degree murder, MCL 750.317; carrying a concealed weapon, MCL 750.227; being a felon in possession of a firearm (felon in possession), MCL 750.224f; and possessing a firearm during the commission of a felony (felony firearm), MCL 750.227b. On this appeal, defendant claims the trial court committed two errors in its jury instructions. We affirm.

## I. FACTUAL BACKGROUND

Defendant testified at trial that he shot and killed Mitz on May 24, 2022, in Pekich Park, but he insisted that he was provoked and that the killing was done in the heat of passion. Defendant described the shooting and the events leading up to it. In addition, security footage played for the jury at trial depicted the moments before the shooting as well as the shooting itself. The evidence at trial revealed that defendant first met Mitz a week or two before the shooting took place. Three days before the shooting, Mitz hit defendant in the face with a gun, knocking out one of defendant's teeth and cracking another tooth. After that run-in with Mitz, defendant acquired a gun, which he brought to Pekich Park on May 24 and used to kill Mitz.

On May 24, 2022, the day of the shooting, defendant went to the park with Arthur Brown, Jr., whom defendant described as his "best friend." Defendant wore a ski mask and compression sleeves on his arms to cover his tattoos so that, if "something went down," it would be difficult to identify him. While defendant was in the park, Mitz approached him and said that he could have

killed defendant the other day, and that when he caught defendant again, he was going to kill him. Defendant saw a bulge in Mitz's pocket and believed it was a gun. According to defendant, Mitz followed him, telling him he could have killed him.

Three minutes before the shooting took place, defendant and Brown walked away from the park. Defendant told Brown that he was going to return to the park and kill Mitz before Mitz could kill him. Brown told defendant not to do that. Defendant later testified about how he was feeling in the minutes immediately before the shooting:

> Like, I'm feeling like a emotional feeling mixed with anxiety. I had chills. I—my body was like cold. I felt sad, depressed. Everything in one. It was like a heat of passion, like I was being provoked. I couldn't quite get myself together to calm down. It's like I had no thought process of trying to—I didn't know the route to take to try to get myself to calm down.

Defendant also said that he had consumed ecstasy and marijuana that day, which made him feel paranoid, nervous, excited, and impulsive. Instead of heeding the advice from Brown, defendant formulated a plan to kill Mitz, and then he returned to the park and carried out that plan.

When defendant returned to the park, he saw Mitz standing there and began shooting. Mitz ran across the street and towards an alley, with defendant in pursuit firing more shots. Several of those shots struck Mitz, who fell to the ground and laid motionless at the entrance of an alley. A firearm, which was not the gun that defendant used to shoot Mitz, ended up on the ground next to Mitz. Defendant then ran away and hid the gun, the ski mask, and the compression sleeves. When the police arrived shortly thereafter, they found Mitz suffering from multiple gunshot wounds. He was taken to a hospital, where he died. An autopsy revealed that Mitz had eight gunshot wounds, and the forensic pathologist who performed the autopsy believed that two of those gunshot wounds were fatal.

Defendant was charged with open murder as well as gun-related offenses. Before the trial began, defendant requested that the jurors be instructed on the lesser included offense of voluntary manslaughter. The trial court deferred its ruling on that request until the end of the trial so it could make its decision based upon the evidence admitted during the trial. In its preliminary instructions to the jury, the trial court orally informed the jury of the elements of the charged crimes—including first-degree murder and the lesser included offense of second-degree murder—and gave each juror a handout that listed those elements.

On August 23, 2023, at the conclusion of the trial, defendant renewed his request for a jury instruction on the lesser included offense of voluntary manslaughter, but the trial court denied that request because it did not believe the evidence supported that instruction. In addition, rather than orally instructing the jury on the elements of each charged offense, the trial court referred the jurors to the handout that they had received in conjunction with the trial court's initial instructions.

The jury acquitted defendant of first-degree murder, but found him guilty of second-degree murder and the gun-related charges. The trial court sentenced defendant to serve 50 to 100 years in prison for second-degree murder and shorter, concurrent prison terms for carrying a concealed weapon and felon in possession. Additionally, the trial court sentenced defendant to a statutorily

mandated two-year consecutive term of imprisonment for felony firearm. Defendant now appeals of right his convictions, but not his sentences.

## II. LEGAL ANALYSIS

On appeal, defendant insists he is entitled to a new trial because the trial court committed two separate errors in its jury instructions. First, defendant contends that the trial court abused its discretion by refusing to instruct the jury on the lesser included offense of voluntary manslaughter, which the trial court found was unsupported by the evidence. Next, defendant asserts that the trial court erred when it did not orally instruct the jurors on the elements of the charged crimes at the conclusion of the trial. We will address each argument in turn.

### A. REFUSAL TO INSTRUCT ON VOLUNTARY MANSLAUGHTER

Defendant claims he was entitled to have the jury instructed on the lesser included offense of voluntary manslaughter because a rational view of the evidence supported that instruction. He argues that the trial court abused its discretion by denying his request to provide that instruction to the jury. "Claims of instructional error are generally reviewed de novo by this Court, but the trial court's determination that a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion." *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). A trial court abuses its discretion if its decision "falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008).

Manslaughter is a lesser included offense of murder. *People v Mendoza*, 468 Mich 527, 533; 664 NW2d 685 (2003). If a defendant is charged with murder, instructions for voluntary and involuntary manslaughter "must be given if supported by a rational view of the evidence." *People v Tierney*, 266 Mich App 687, 714; 703 NW2d 204 (2005). To be supported by a rational view of the evidence at the trial, "[n]ot only must there be some evidence that would support a conviction on the lesser offense, but proof on the element or elements differentiating the two crimes must be sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense." *People v Cornell*, 466 Mich 335, 352; 646 NW2d 127 (2002) (quotation marks and citation omitted).

Defendant was charged with first-degree murder. "The elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *People v Bass*, 317 Mich App 241, 265-266; 893 NW2d 140 (2016). The jury was instructed on the lesser included offense of second-degree murder, and the jury decided to convict defendant of that lesser offense, which requires proof of "(1) death, (2) caused by defendant's act, (3) with malice, and (4) without justification." *Mendoza*, 468 Mich at 534.

Defendant insists the jury should have been instructed on voluntary manslaughter, which "is murder without malice." *Id*. To establish voluntary manslaughter, the prosecution must prove, beyond a reasonable doubt, "that: (1) the defendant killed in the heat of passion; (2) the passion was caused by adequate provocation; and (3) there was no lapse of time during which a reasonable person could have controlled his passions." *Tierney*, 266 Mich App at 714. Hence, "[a] defendant properly convicted of voluntary manslaughter is a person who has acted out of a temporary excitement induced by an adequate provocation and not from the deliberation and reflection that

marks the crime of murder." *People v Townes*, 391 Mich 578, 590; 218 NW2d 136 (1974). "The degree of provocation required to mitigate a killing from murder to manslaughter is that which causes the defendant to act out of passion rather than reason." *Tierney*, 266 Mich App at 714-715 (quotation marks and citation omitted). "In order for the provocation to be adequate it must be that which would cause a reasonable person to lose control." *Id*. at 715. Consequently, the focus is on "a reasonable person," and "not just the specific defendant." *People v Yeager*, 511 Mich 478, 489; 999 NW2d 490 (2023).

Our Supreme Court previously addressed the suitability of instructing the jury on voluntary manslaughter in a case where, after a "verbal fracas," the defendant left the scene before returning and committing the killing. *People v Pouncey*, 437 Mich 382, 391-392; 471 NW2d 346 (1991). There, the defendant went into the "safe harbor" of a house and could have stayed in that house. *Id*. at 392. Instead, the defendant retrieved a gun, went back outside, and shot the victim. *Id*. The Supreme Court held that "[t]he evidence adduced at trial would not support finding the defendant guilty of voluntary manslaughter." *Id*.

Here, some evidence established that defendant was scared of Mitz. There was evidence that Mitz had attacked defendant days before the shooting, causing significant injury to defendant's teeth. Also, defendant testified that, in the moments prior to the shooting, Mitz told defendant that he was going to kill defendant, and defendant believed that Mitz had a gun in his pocket.

But the evidence also suggested that the shooting was the product of defendant's planning. Before defendant went to Pekich Park on May 24, he acquired a gun and took steps to conceal his identity by wearing a ski mask and clothing that hid his tattoos. Critically, the video evidence and defendant's testimony establish that after the interaction between defendant and Mitz at the park—when Mitz purportedly threatened to kill defendant—defendant voluntarily walked away from the park and discussed the situation with Brown. During that conversation, defendant told Brown that he was going to kill Mitz, and Brown tried to talk defendant out of that plan. Defendant described the emotions he was feeling in those minutes, explaining that he was feeling "like a heat of passion, like I was being provoked," and he could not get himself to calm down. But the fact that defendant left the park and spent a few minutes discussing the situation with his best friend is strong evidence that defendant did not act out of passion rather than reason when he shot Mitz. Indeed, there was a lapse of time between the provocation by Mitz and the shooting by defendant when a reasonable person could have harnessed his passions. See *Tierney*, 266 Mich App at 714-715.

To support his claim that the trial court was required to instruct on voluntary manslaughter, defendant cites *People v Mitchell*, 301 Mich App 282; 835 NW2d 615 (2013). In *Mitchell*, this Court ruled that the evidence was sufficient to warrant an instruction on voluntary manslaughter, so the trial court abused its discretion by failing to give that instruction. *Id*. at 288. But *Mitchell* is distinguishable from the instant case. In *Mitchell*, there was evidence that the victim was the initial aggressor—attacking the defendant with a baseball bat—and the victim died after defendant gained control of the baseball bat and hit the victim. *Id*. at 287-288. There was no evidence that the defendant left the scene between the provocation and the killing, no evidence that the defendant had the opportunity to discuss the idea of killing the victim with a friend, and no evidence that he formulated a plan to kill the victim. Conversely, in the instant case, defendant admitted that after the provocation by Mitz, he left the park, discussed killing Mitz with Brown, and then formulated a plan to kill Mitz. Further distinguishing this case from *Mitchell* is the fact that defendant brought

the murder weapon with him to the park, and he even brought clothing to conceal his identity. The instant case is more similar to *Pouncey*, in which the defendant left the scene and could have stayed away, but instead retrieved a gun, went back to the scene, and shot and killed the victim. *Pouncey*, 437 Mich at 391-392. There, our Supreme Court affirmed the trial court's decision not to instruct the jury on voluntary manslaughter. *Id*. at 392.

The trial court's determination that the evidence did not support a voluntary manslaughter instruction because, among other things, defendant left the victim's location and could have stayed away, but instead decided to return and commit the killing, is directly supported by caselaw from our Supreme Court. *Id*. at 391-392. Therefore, it was not outside of the range of reasonable and principled outcomes for the trial court to decide that a rational view of the evidence did not support instructing the jury on voluntary manslaughter because defendant did not establish that he acted in the heat of passion. In sum, the trial court did not abuse its discretion when it denied defendant's request to instruct the jury on voluntary manslaughter.

B. ORAL INSTRUCTION ON THE ELEMENTS OF THE CHARGED CRIMES

Next, defendant asserts that the trial court committed structural error when it did not orally instruct the jury on the elements of the charged crimes at the conclusion of the trial. The trial court orally instructed the jury on the elements of each charged crime and the lesser included offense of second-degree murder at the beginning of trial. But at the end of trial, it simply directed the jurors' attention to a handout they had been given that listed those elements. Defendant waived that issue, thereby extinguishing any error for appellate review.

It is "a nonstructural error" that "is clearly subject to a waiver analysis" when the trial court gives the jurors a handout with the elements of the charged crimes without also orally instructing the jurors on those elements. *People v Traver*, 502 Mich 23, 40 n 7; 917 NW2d 260 (2018). When a defendant does not object to a jury instruction at trial, we must decide whether the defendant has forfeited or waived the right to challenge that jury instruction on appeal. *People v Hall*, 256 Mich App 674, 679; 671 NW2d 545 (2003). "Forfeiture" is the failure to timely assert a right, whereas "waiver" is the intentional relinquishment or abandonment of a known right. *Id*. When a defendant waives the right to object to a jury instruction, that waiver extinguishes any error, and the defendant may not seek appellate review of a claimed deprivation of the right. *Id*. To waive a known right, a party must "clearly express[ ] satisfaction with a trial court's decision . . . ." *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011).

Here, the prosecution concedes that it was error for the trial court not to orally instruct the jury on the elements of the charged crimes at the conclusion of the trial, but the prosecution insists that defendant waived the issue. In contrast, defendant claims the trial court committed a structural error requiring reversal. Defendant's claim of a structural error is meritless. What occurred during the trial was a nonstructural error subject to a waiver analysis. See *Traver*, 502 Mich at 40 n 7. A review of the trial-court record conclusively establishes that defendant waived the issue.

After both parties delivered their closing arguments, the trial court read its final instructions to the jury. In doing so, instead of orally informing the jurors of the elements of the charged crimes as it had done in its preliminary instructions, the trial court simply referred the jurors to the handout listing the elements that they had been given at the outset of the trial. After reading its instructions,

the trial court asked whether either side had any objection to the instructions, and both parties said no. By expressing satisfaction with the trial court's handling of the jury instructions, including its decision not to orally instruct the jury on the elements of the charged offenses again at the end of the trial and, instead, refer the jurors to the handout they had received, defendant waived that issue and extinguished any error. See *Kowalski*, 489 Mich at 503; *Hall*, 256 Mich App at 679.

Affirmed.

/s/ Christopher P. Yates
/s/ Anica Letica
/s/ Noah P. Hood